[No. 50007–0.  En Banc.  June 21, 1984.]

PROGRESSIVE CASUALTY INSURANCE COMPANY, *Respondent,*
v. WILLARD O. JESTER, *as Personal Representative,*
ET AL, *Appellants.*

*Herrmann, Levenson, Margullis & Ray,* by *Rodney B. Ray* and *Jeffrey D. Gross,* for appellants.

*Walker, Dowell, Hunter & Twining, Willard Walker,* and *George E. Twining,* for respondent.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington Trial Lawyers Association, amici curiae for appellants.

DIMMICK, J.—In *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 213, 643 P.2d 441 (1982), we reserved for another day the question of the validity of motor vehicle insurance policy exclusions consciously bargained for

by the insurer and its insured. That day has arrived. We hold public policy is not violated by a motorcycle insurance policy provision which excludes liability coverage for claims made by passengers, when the insured intentionally rejected that coverage when offered. We therefore affirm the trial court in holding the exclusion valid.

The facts are undisputed. The late Kelly Jester obtained a policy of motorcycle insurance from the respondent, Progressive Casualty Insurance Company (Progressive). The policy excluded liability coverage for claims made by passengers. The agent who sold the policy to Jester explained the passenger exclusion to him and advised him to obtain guest passenger liability coverage for an additional $23 premium. Jester declined the additional coverage, apparently believing he would not have occasion to have someone else ride with him.

On August 19, 1982, Jester was involved in a 1–vehicle accident while carrying Carolyn Wendt as a passenger on his motorcycle. Jester was killed; Wendt was seriously injured. Wendt filed a personal injury suit against Willard Jester, personal representative of the estate of Kelly Jester. Progressive filed this action seeking a declaration that the policy it had issued to Kelly Jester provided no liability coverage for Wendt's claims, and that it had no duty to defend Wendt's personal injury suit or to pay any sums recovered by Wendt.

Thereafter, Progressive moved for summary judgment. Wendt countered with her own motion for summary judgment, arguing that the passenger exclusion contained in Progressive's policy was void as against public policy. The trial court granted Progressive's motion for summary judgment and denied Wendt's motion for summary judgment. Wendt appealed; Progressive's motion to transfer Wendt's appeal to this court was granted.

The rule is well settled that we may not modify clear and unambiguous language in an insurance contract. *Tucker v. Bankers Life & Cas. Co.*, 67 Wn.2d 60, 66, 406 P.2d 628, 23 A.L.R.3d 1098 (1965). In this case, the policy Progressive

sold to Jester contains clear and unambiguous language excluding liability coverage for claims made by passengers. Nevertheless, contract provisions are subject to limitation and invalidation if they contravene public policy. *Whitaker v. Spiegel, Inc.,* 95 Wn.2d 661, 667, 623 P.2d 1147, 637 P.2d 235 (1981). Recognizing this principle, Wendt bases her case almost entirely on *Mutual of Enumclaw Ins. Co. v. Wiscomb, supra. Wiscomb* held that family or household exclusion clauses in automobile insurance policies, which purported to exclude liability for bodily injury to family members of the insured residing in his household, violated Washington's public policy of assuring compensation to the victims of negligent and careless drivers. In an attempt to extend the *Wiscomb* holding, Wendt argues that the passenger exclusion in Progressive's policy violates this same public policy.

Wendt's argument ignores an essential difference between her case and *Wiscomb.* In *Wiscomb,* we were concerned about the parties' lack of bargaining power in contracting with the insurer. The insurer in that case, the Mutual of Enumclaw Insurance Company, would not sell a policy without the family or household exclusion. We noted that such a state of affairs undercut any assertion that the parties were free to contract for additional coverage for family or household members if they wished. *Wiscomb,* at 211. We therefore held that the strength of Washington's public policy in favor of compensating the victims of negligent and careless drivers overrode any "'freedom of contract' analysis—*at least when the parties to the insurance contract had not truly bargained for such an exclusion."* (Italics ours.) *Wiscomb,* at 213.

Here, on the other hand, Kelly Jester and Progressive *did* truly bargain for the passenger exclusion in the motorcycle insurance policy. Affidavits on file indicate Jester was offered the opportunity to purchase guest passenger liability coverage for a modest premium; indeed, the insurance agent urged him to do so. He decided not to buy the additional coverage. Under these circumstances, the

reasoning of *Wiscomb* does not apply, and the passenger exclusion does not violate public policy. *See Greer v. Northwestern Nat'l Ins. Co.*, 36 Wn. App. 330, 341, 674 P.2d 1257 (1984).

Nevertheless, Wendt argues that even a bargained–for exclusion violates public policy where it purports to deny coverage to any person not a party to the insurance contract. *See Wiscomb*, at 213. We decline to follow this dicta. Although we may question the wisdom of permitting insureds to contract away coverage for passengers, our Legislature has determined otherwise by refusing to require mandatory insurance coverage. Under our financial responsibility act, an individual need not prove financial responsibility until a vehicle owned or driven by him is involved in an accident resulting in bodily injury or death of any person, or property damage of $300 or more. RCW 46.29.060. Even after such an accident has occurred, proof of financial responsibility for the accident and in the future may be made in a number of ways, including, but not limited to, proof of liability insurance. RCW 46.29.070, .080, .450. Since the Legislature has not seen fit to require mandatory insurance coverage, we will not replace its assessment of public policy with our own.[1] So long as an insured has the opportunity to purchase passenger coverage from an insurer, the public policy in favor of compensating the victims of negligent driving is not violated.

*Wiscomb* may also be distinguished on the basis that it dealt with a family or household exclusion. We found this type of exclusion particularly disturbing in light of the fact that typical family relations made it impossible for family members to conform their activities to avoid the risk of

---

[1]Attorneys on behalf of Washington State Trial Lawyers Association filed a brief in this case as amici curiae, urging us to hold, as a matter of public policy, that *all* motor vehicle insurance policies must provide the minimum liability coverage required by the financial responsibility act, whether they are certified as proof of future financial responsibility or not. We have rejected this suggestion twice before. *See Royse v. Boldt*, 80 Wn.2d 44, 46, 491 P.2d 644 (1971); *Barkwill v. Englen*, 57 Wn.2d 545, 548, 358 P.2d 317 (1961). We do not adopt it now.

riding with someone who, as to them, was uninsured. *Wiscomb,* at 208. This concern is not present where, as here, an unrelated adult voluntarily rides as a passenger on a motorcycle.

Wendt contends that the passenger exclusion in the Jester policy, like the family or household exclusion, focuses not on the risk associated with who is driving the vehicle, but on which parties are injured. *Wiscomb,* at 209. In view of the distinctions already noted between the facts of this case and *Wiscomb,* this one similarity is not sufficient to bring this case within the *Wiscomb* holding.

Finally, Wendt points out that insurers in this state need not provide underinsured motorist coverage to their insureds when they operate or occupy a motorcycle or motor-driven cycle. RCW 48.22.030(2). Therefore, she reasons, the public policy in favor of assuring compensation to the victims of negligent driving can be effected with respect to motorcycle passengers only by requiring the liability insurance policy of the motorcycle driver or owner to provide passenger coverage. Since nothing in RCW 48.22.030(2) *prevents* insurers from offering underinsured motorist coverage which would apply even when the insured was riding a motorcycle, Wendt's argument hinges upon proof that such coverage is in fact not available in Washington. Wendt did not provide the court with such proof. Thus, her argument must fail.

We are not insensitive to the suffering endured by innocent motorcycle passengers like Wendt who are injured only to discover that the motorcyclist's liability insurance excludes coverage for them. Nevertheless, we cannot require mandatory insurance where the Legislature has declined to do so.[2]

---

[2]With respect to the plight of the motorcycle passenger, we note that effective April 1, 1983, the Insurance Commissioner withdrew from use motorcycle liability insurance forms which contain a passenger exclusion. Insurance Commissioner Bulletin No. 82–9. The Insurance Commissioner is an elected official. RCW 48.02-.010. Generally, no insurance policy form may be used in this state absent his approval. RCW 48.18.100. By exercising his discretion to withdraw motorcycle

The judgment of the trial court is affirmed.

UTTER, DOLLIVER, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

WILLIAMS, C.J. (dissenting)—As I understand the majority's "freedom of contract" rationale, an insurance policy that excluded coverage for all blond, blue–eyed individuals would be enforceable simply because the driver had bargained for the exclusion. I believe that an exclusion clause that arbitrarily denies coverage for an innocent victim, whether it be a family member, passenger, or pedestrian, ought to be unenforceable as against public policy. The majority's freedom of contract analysis allows the insurance company and its insured to evade the public policy of this state, and thereby effectively overrules *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982). I therefore dissent.

As we noted in *Wiscomb,* the provisions of the financial responsibility act, RCW 46.29, do not become mandatory until the driver is involved in an accident causing injury or damage of $300 or more. RCW 46.29.060; *Wiscomb,* at 206. Nevertheless, once the provisions do become mandatory, the driver must present proof of financial responsibility sufficient to satisfy any judgment resulting from any future accident. RCW 46.29.070(1); *see also* RCW 46.29.090(1) (requiring minimum coverage of $25,000 for each 1–person accident, $50,000 for each 2–person accident). Thus, to the greatest extent possible without actually requiring across–the–board, mandatory insurance, the Legislature has demonstrated a strong policy of ensuring that drivers have adequate insurance to pay for the damage they cause. As we stated in *Wiscomb*: "Quite simply, the statute creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries

liability insurance forms which exclude passenger coverage, the Commissioner, in his wisdom, has ensured that future motorcycle passengers will be protected. Thus, the Insurance Commissioner has acted where we may not.

through the negligent use of public highways by others."
*Wiscomb,* at 206; *see also LaPoint v. Richards,* 66 Wn.2d
585, 590, 403 P.2d 889 (1965). The underinsured motorist
statute, RCW 48.22.030, reflects the same policy. *Wiscomb,*
at 207–08; *Touchette v. Northwestern Mut. Ins. Co.,* 80
Wn.2d 327, 333, 494 P.2d 479 (1972). While particular pro-
visions of these statutes may not apply in a particular case,
the public policy implicit in these statutes should guide us
in interpreting and enforcing insurance contracts "affected
with the public interest". *Touchette,* at 332.

Turning to the insurance contract in this case, it is clear
that the passenger exclusion clause violates public policy in
the same way that the family exclusion clause did so in
*Wiscomb.* Unlike other exclusion clauses we have upheld,
this clause focuses "not on the risk associated with who is
driving the vehicle, but on which parties are injured." *Wis-
comb,* at 209. If Progressive Casualty had shown that the
passenger's presence made the motorcycle more unstable or
dangerous, I would agree that the clause is valid on the
ground that the insurer may limit or exclude coverage to
reflect increased risks. *Cf. Royse v. Boldt,* 80 Wn.2d 44, 491
P.2d 644 (1971) (upholding clause excluding coverage for
accident in which automobile was operated by one other
than the named insured); *St. Paul Fire & Marine Ins. Co.
v. Circle Bar J Boys' Ranch, Inc.,* 1 Wn. App. 377, 461 P.2d
567 (1969) (upholding clause excluding coverage for drivers
under 25 years of age). But Progressive Casualty did not
make such a showing. This exclusion clause focuses not on
the driver, but on who is injured. It "is directed at a class of
innocent victims who have no control over the vehicle's
operation and who cannot be said to increase the *nature* of
the insurer's risk", *Wiscomb,* at 209, and under the author-
ity of *Wiscomb* it should be unenforceable.

The majority sidesteps this analysis from *Wiscomb,*
arguing that it "does not apply" to this case. Majority
opinion, at 81. It states that the "essential difference"
between this case and *Wiscomb* is that in this case Jester
actually bargained for the exclusion at the lower rate.

Majority opinion, at 80. In so doing, the majority plainly misreads the freedom of contract discussion in *Wiscomb.* The point of that discussion was that the exclusion clause might be valid if the *named insureds* consciously bargained for exclusion of coverage for themselves or other *named insureds.* Here, however, as in *Wiscomb,* the contract excluded coverage for an unnamed third party who had no part in the negotiations. Ms. Wendt did not "intelligently choose to add [this] exclusion," *Wiscomb,* at 212, and as such the freedom of contract discussion in *Wiscomb* cannot be invoked to save this exclusion.

This conclusion is clear from the *Wiscomb* opinion. One of the evils in *Wiscomb* was that the insured was faced with a take–it–or–leave–it proposition: either buy the insurance excluding coverage, or buy no insurance at all. We concluded that in this situation there was no real freedom of contract or equality of bargaining power. We then stated:

> A different question would be presented if the policy provided this coverage and the individual insureds and insurers contract for the exclusion.

*Wiscomb,* at 212. The "different question" we envisioned, however, was one in which the named insureds consciously bargained for exclusion of coverage for themselves or other named insureds in the family. *See Wiscomb,* at 212 & n.2. That question is *not presented in this case.* The question here, as stated above, is whether the named insured could validly exclude coverage for an unnamed, third party passenger. *Wiscomb* clearly states that such an exclusion is invalid:

> Under any circumstances, exclusion clauses which purport to deny coverage to children of the insured *or any person not a party to the insurance contract* are violative of this state's public policy. We reserve for a later date the question of the validity of exclusions which are consciously bargained for by the insurer and named insureds in the manner described above.

*Wiscomb,* at 213. To repeat, the "manner described above" was the situation in which the named insured consciously

bargained away coverage for himself or another named insured. If the contract excludes coverage for "any person not a party to the contract", it is unenforceable.

The majority, of course, dismisses this as merely dicta. Majority opinion, at 81. This "dicta", however, was central to the reasoning in *Wiscomb*. The reasoning was that insurance policies must be consistent with this state's public policy of protecting innocent highway users from the negligence of others. A policy in which the named insureds knowingly bargain away coverage for themselves is not inconsistent with this policy. In such a case the named insured could make an intelligent choice to limit or exclude coverage in return for lower rates. They are not innocent victims, because they consciously bargained for the exclusion. But the insurance policy in this case excludes coverage to one who did not participate in the negotiating process and probably had no reason to know of the exclusion clause.

In short, the fact that Kelly Jester bargained for this exclusion is irrelevant. The "freedom of contract" between Mr. Jester and Progressive Casualty in no way furthers the public policy of protecting innocent victims on the highways. To the contrary, this very freedom of contract allows an insurance company and its insured to thwart this public policy; it allows market forces, not the Legislature or the courts, to determine public policy. The majority's rationale could conceivably sanction an insurance contract that excluded coverage for passengers, pedestrians, and people walking on the left side of the street, simply because the insured had bargained for these exclusions at a lower rate. Such an insurance contract, although appearing to provide protection against the insured's negligence, would actually provide only minimal coverage. I think such a contract, like the contract in this case, violates the principle set out in *Wiscomb*: an exclusion that arbitrarily focuses on who is injured, not the nature of the insurer's risk, is unenforceable as against public policy.

Finally, I am not as confident as the majority that, as a

result of the Insurance Commissioner's Bulletin, these exclusion clauses will not be used in the future. The Commissioner's decision to withdraw approval of these forms was based entirely on *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wn.2d 203, 643 P.2d 441 (1982). The Bulletin begins by stating that *Wiscomb* "has raised doubts as to the validity of [motorcycle passenger exclusion clauses]." Insurance Commissioner Bulletin No. 82–9. Now that the majority has resolved these doubts, I can see no reason for the Commissioner to continue to disapprove of the clauses. *Cf.* RCW 48.18.110 (listing the grounds on which the Commissioner may disapprove insurance forms). To the contrary, I expect the use of these forms to resume as soon as the majority opinion is filed.

In sum, I would hold this clause unenforceable. It excludes a whole class of victims who, for all the record shows, do not increase the nature of the insurer's risk. I think this clause violates public policy in the same way that the family exclusion clause did so in *Wiscomb.* I therefore dissent.

ROSELLINI, BRACHTENBACH, and DORE, JJ., concur with WILLIAMS, C.J.

Reconsideration denied August 21, 1984.