[No. 5835-2-III.   Division Three.   December 20, 1984.]

DON E. ABBOTT, ET AL, *Appellants,* v. GENERAL ACCIDENT GROUP, *Respondent.*

*Larry J. Butler, John P. Lynch,* and *Butler & Lynch,* for appellants.

*Richard W. Kuhling, Diane M. Hermanson,* and *Paine, Hamblen, Coffin & Brooke,* for respondent.

GAVIN, J.*—Don and Tonie Abbott appeal an order dismissing their claim for declaratory relief against General Accident Group (GAG) under an underinsured motorist provision in the Abbotts' automobile insurance policy.

On April 21, 1981, Mr. Abbott was injured in an accident caused by an uninsured motorist while operating a tractor trailer within the scope of his employment. As a result of

---

*Judge F. James Gavin is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

his injuries, Mr. Abbott was unable to return to work. Following a settlement with his employer's insurance carrier, and an adjudication by the Department of Labor and Industries, Mr. Abbott filed an insurance claim with GAG. GAG denied coverage relying upon the following provisions in the automobile policy:

> We will not pay you or any family member for injury received while occupying an auto furnished for your regular use.
>
> . . .
>
> A. We do not provide Underinsured Motorists Coverage for bodily injury sustained by any person:
> 1. While operating, or occupying, any motor vehicle owned by or available for the regular use of you or any family member which is not insured for Liability coverage under this policy.

ISSUE ONE. Are the underinsured motorist coverage statute and the automobile insurance policy provisions excluding coverage ambiguous because they do not differentiate between regular use in employment and regular personal use, and is the statute against public policy?

We hold they are not ambiguous and the statute is not against public policy.

In *Westhaver v. Hawaiian Ins. & Guar. Co.*, 15 Wn. App. 406, 549 P.2d 507 (1976), a policyholder was injured while driving a van within the scope of his employment which was provided to him by his employer on a regular basis. He contended the vehicle was not furnished for *his* regular use because it was rarely used for any benefit to him personally, and, in fact, was furnished for the regular use and benefit of the employer. The policy covered medical expenses of a named insured and his relatives who sustained bodily injury while occupying an "owned" or "non–owned" automobile. It defined a nonowned automobile as "an automobile . . . not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile . . .'" *Westhaver*, at 406. The court placed little importance upon the distinction between personal use and use in employment stating:

Likewise, in the instant case where the regular use of the van benefited [plaintiff's] employer primarily, and [plaintiff] personally only incidentally, the result is the same. The exclusionary clause is directed against an increase in the quantum of use which enhances the risk without a corresponding addition to the premium.

*Westhaver,* at 408.

As in *Westhaver,* Mr. Abbott's regular use of his employer's trucks enhanced the risk of his involvement in an accident with an underinsured motorist without payment of additional premiums for coverage while operating an employer provided vehicle. *Westhaver* also states, at page 409:

In the case at bench, the Ford van was admittedly furnished for Russell Westhaver's regular use, a fact pattern to which the exclusionary clause is clearly directed. In light of the general purpose and effect of the exclusionary provision in Hawaiian's policy, we hold that the identity of the beneficiary of such use does not alter the meaning of "furnished for the regular use of either the named insured or any relative . . ." We find no ambiguity.

(Footnote omitted.)

Although *Westhaver* involved a question of coverage under an exclusion to a liability provision of the policy, and the present case involves a question of coverage related to application of regular use exclusions under the underinsured motorist and personal injury protection provisions, its reasoning applies.

The Abbotts rely on *Grange Ins. Ass'n v. Great Am. Ins. Co.,* 89 Wn.2d 710, 575 P.2d 235 (1978). *Grange* involved a policy excluding from uninsured motorist coverage "any automobile furnished for regular use to the named insured . . ." *Grange,* at 717. Therein a police officer was injured while sitting in a police car which was struck by an uninsured motorist. Although the court noted there was no evidence to support a conclusion the vehicle was furnished for the officer's regular use, it held the exclusion repugnant to the UMC statute. Although *Grange* provides historical background to the UMC statute, it was decided in 1978 and

the statute was amended in 1980 to include, and thus approve, the exclusion *Grange* held repugnant to the statute. The UMC statute, RCW 48.22.030(2), reads as follows:

> No new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury, death, or property damage, suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be issued with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, . . . because of bodily injury, death, or property damage, resulting therefrom, *except while operating or occupying a . . . motor vehicle owned or available for the regular use by the named insured or any family member, and which is not insured under the liability coverage of the policy.*

(Italics ours.)

■ Generally, ambiguities in insurance policies are to be interpreted in favor of the insured. *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 95 Wn.2d 909, 913, 631 P.2d 947 (1981); *First Nat'l Ins. Co. of Am. v. Perala,* 32 Wn. App. 527, 531, 648 P.2d 472 (1982). However, language in an insurance policy which is clear and unambiguous must be given effect in accordance with its plain meaning and may not be construed by the courts. *Progressive Cas. Ins. Co. v. Jester,* 102 Wn.2d 78, 79–80, 683 P.2d 180 (1984); *Rocky Mt. Fire & Cas. Co. v. Goetz,* 30 Wn. App. 185, 187–88, 633 P.2d 109 (1981). Here, the term "regular use" is not ambiguous. *Westhaver v. Hawaiian Ins. & Guar. Co., supra.*

■ Exclusions in insurance policies are to be strictly construed against the insurer and will not operate to cut off liability of an insurer unless they do so in clear language. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 68–69, 659 P.2d 509 (1983). If exclusions are spelled out for the policyholder in clear and unmistakable language, and the nature of the insurer's risk is altered by factors not contemplated in the computation of premiums, they are

permissible. *Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 408, 670 P.2d 267 (1983); *Grange Ins. Ass'n v. MacKenzie,* 37 Wn. App. 703, 706, 683 P.2d 221 (1984). Here, the exclusionary language is clear and unmistakable, and GAG's risk is altered by factors not contemplated in the computation of premiums.

■■ The Abbotts further argue the UMC statute is against public policy. A statute is presumed to be valid and the party challenging it has the burden of proving its invalidity. *Foundation for the Handicapped v. Department of Social & Health Servs.,* 97 Wn.2d 691, 695, 648 P.2d 884 (1982), *cert. denied,* 459 U.S. 1146 (1983). The Legislature is presumed to be aware of its past legislation and judicial interpretations thereof. *State v. Theilken,* 102 Wn.2d 271, 276, 684 P.2d 709 (1984); *In re Marriage of Little,* 96 Wn.2d 183, 189–90, 634 P.2d 498 (1981). The Legislature's passage of an amendment to an unambiguous statute indicates an intent to change the law. *People's Org. for Wash. Energy Resources v. Utilities & Transp. Comm'n,* 101 Wn.2d 425, 431, 679 P.2d 922 (1984). Thus, it can be presumed the Legislature, prior to its amendment to the UMC statute, was aware of the statute and *Grange Ins. Ass'n v. Great Am. Ins. Co., supra.* While the legislative policy of the UMC statute is to protect innocent victims of uninsured drivers, not vehicles, *Finney v. Farmers Ins. Co.,* 92 Wn.2d 748, 751, 600 P.2d 1272 (1979), it is clear the Legislature was aware of this public policy when it amended the statute to include the exclusion. A regular use exclusion in no way affects the broad and beneficial purpose of the statute and does not violate public policy.

ISSUE TWO. Does the "regular use" exclusion of RCW 48.22.030 deny equal protection and/or the constitutionally protected right to travel?

We hold it does not deny equal protection nor does it violate the right to travel.

An equal protection analysis initially requires identification of the standard of judicial review. If a statute creates an inherently suspect classification, *i.e.,* one based upon

race, nationality or alienage, or affects a fundamental right, it will be subjected to strict scrutiny. *Paulson v. Pierce Cy.,* 99 Wn.2d 645, 652, 664 P.2d 1202 (1983). A statute which does not affect fundamental rights or create a suspect classification is generally subjected to minimal judicial scrutiny and will not be invalidated unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective. *Paulson,* at 652; *see also McGowan v. Maryland,* 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961). Under the minimum scrutiny test, the reviewing court must determine whether: (1) the legislation applies equally to all members within the designated class; (2) there are reasonable grounds to distinguish between those within and those without the class; and (3) the classification has a rational relationship to the purpose of the statute. *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.,* 100 Wn.2d 776, 781–82, 675 P.2d 232 (1984).

The Abbotts argue RCW 48.22.030(2) creates an inherently suspect classification and the classification impinges on the fundamental right to travel. The statute does not create an inherently suspect classification and is not subject to strict scrutiny on that basis.

Although the right to travel is a fundamental right, it is not absolute. *Macias v. Department of Labor & Indus.,* 100 Wn.2d 263, 272, 668 P.2d 1278 (1983). In *Macias,* migrant farm workers argued a workers' compensation statute requiring seasonal workers to earn $150 from each employer in order to file a claim for benefits infringed upon the fundamental right to travel. They argued the typical farm worker must move from farm to farm and state to state in order to obtain continual employment. The court held the challenged statute constituted a penalty on a migrant worker's right to travel and the workers' compensation program is a basic necessity of life. *Macias,* at 274. *Macias,* at 273, also held a certain "amount of impact" on the right to travel is required before the strict scrutiny/compelling state interest test is triggered. Although the confines of the right to travel have not been thoroughly defined, *Macias,* at 272,

*Eggert v. Seattle,* 81 Wn.2d 840, 845–46, 505 P.2d 801 (1973) indicates the right to travel protects migration or movement with the intent to settle or abide. *See also Duranceau v. Tacoma,* 27 Wn. App. 777, 780, 620 P.2d 533 (1980). However, this court in *Halsted v. Sallee,* 31 Wn. App. 193, 639 P.2d 877 (1982), indicates the right encompasses any travel throughout the length and breadth of our land. *See Shapiro v. Thompson,* 394 U.S. 618, 629, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969).

■ The Abbotts argue the uninsured motorist statute's "regular use" exclusion impinges on a basic necessity of life—their right to uninsured motorist compensation benefits and the right to earn a living. As indicated in *Eggert,* at 846–47: "in the tuition cases the residence requirements did not have the purpose or effect of excluding or deterring nonresident students from attending the university." Similarly, the "regular use" exclusion in RCW 48.22.030(2) does not exclude employees who are driving their employers' vehicles. They can negotiate with their insurers to delete the regular use exclusion from their policies. Furthermore, the exclusion does not endanger life or health, nor does it interfere with any "right" to earn a living. Consequently, we hold RCW 48.22.030(2) does not affect a fundamental right and is therefore not subject to the strict scrutiny test.

Applying the minimal scrutiny test, does the statute meet equal protection requirements? We hold that it does.

Statutes challenged on equal protection grounds under the minimum scrutiny test are presumed constitutional, and the person challenging the statute has a heavy burden of showing no reasonable basis for the classification or that the classification is contrary to the purpose of the legislation. *Paulson,* at 653. The "regular use" exclusion applies to all members of the designated class alike, there is a reasonable basis for distinguishing between those within and those without the classification, and it has a rational relationship to the purpose of the statute.

Although the general policy of the statute is to protect victims of uninsured drivers and not vehicles, the basis for

the "regular use" exclusion is to prevent a policyholder from obtaining coverage for an additional risk without paying extra premiums. If an insurance carrier is required to compensate policyholders injured by uninsured motorists while regularly using their employers' vehicles, the cost most probably would be passed on to all policyholders, both within and without the designated class, resulting in increased premiums to all. Consequently, there is a reasonable basis for distinguishing between those within and those without the classification.

The trial court is affirmed.

McINTURFF and THOMPSON, JJ., concur.

Review denied by Supreme Court March 15, 1985.