[No. 12686-5-I.   Division One.   May 20, 1985.]

DONALD BATDORF, ET AL, *Appellants,* v. TRANSAMERICA TITLE INSURANCE COMPANY, *Respondent.*

*Robert B. Sherwood* of *Bellingham Legal Center,* for appellants.

*James R. Irwin,* for respondent.

SWANSON, J.—The action below was brought by the Batdorfs and Kortlevers to collect costs and attorneys' fees incurred by them when Transamerica Title Insurance Company elected to tender the face amount of their title insurance policies instead of defending them in a lawsuit to quiet title. The Batdorfs and Kortlevers appeal from the order denying their motion for summary judgment and from the order granting Transamerica's motion for summary judgment.

Ben Leibrandt received a patent from the United States in 1931 to lands in Alaska. The patent was not recorded until 1971. In 1957, Leibrandt conveyed his interest in the patented property to James D. Porter, Jr., Clifford A. Porter, and others. The Porters recorded their deed. After the patent was recorded in 1971, Leibrandt transferred said property to the Kortlevers who in turn conveyed to the Batdorfs. Apparently, Transamerica conducted its title search only back to the date the patent was recorded in 1971. It failed to notify the Batdorfs or Kortlevers of the interest of the Porters and issued separate title insurance policies to the Batdorfs and the Kortlevers covering that property in Alaska. The face amount of the Batdorfs' policy was $6,800; the Kortlevers' policy was $5,000. When the quiet title action was brought in Alaska by the Porters and others, joining the Batdorfs, the Kortlevers, and others as defendants, Transamerica initially accepted the tender of defense by the Batdorfs. However Transamerica soon exer-

cised an option, contained in both title policies, to pay the policy limits to its insureds and terminate all further liability. Transamerica tendered to the Batdorfs $7,146.84 and withdrew from the case. This payment included the policy's face amount and $346.84 in attorneys' fees incurred by the Batdorfs *before* Transamerica made the tender. The Kortlevers, having not yet incurred attorneys' fees, were tendered $5,000, the face amount of their policy. *After* the money tender, the Batdorfs and the Kortlevers defended the Alaska litigation. For this purpose, the Batdorfs and the Kortlevers respectively incurred costs and attorneys' fees in Alaska of $5,446.70 and $3,120.63 and attorneys' fees in Washington State of $482.38 and $775.82. The Alaska litigation was settled. The Batdorfs settled for $8,350, the Kortlevers for $7,250. Then, they both brought suit against Transamerica for the costs and attorneys' fees they incurred *after* Transamerica's payment of their respective policies limits in full.[1]

There was no dispute as to any issue of fact, and the case was submitted to the court on cross motions for summary judgment by Transamerica and the Batdorfs and the Kortlevers.

The relevant provisions of the title insurance policy are the insuring clause on the cover and paragraphs 1 and 3 of the conditions and stipulations:

On the cover sheet, it states:

The total liability is limited to the amount shown in Schedule A, exclusive of costs *incurred by the Company* as an incident to defense or settlement of claims hereunder.

(Italics ours.)

Paragraph 1 states:

The Company shall have the right to, and will, at its own expense, defend the insured with respect to all

---

[1]In addition, the Kortlevers claimed as damages settlement costs of $2,500 incurred in excess of the policy limits. The Batdorfs did not make any claim for damages in excess of the policy limits. The only issue raised in appellants' brief concerns attorneys' fees.

demands and legal proceedings founded upon a claim of title, encumbrance or defect which existed or is claimed to have existed prior to the date hereof and is not set forth or excepted herein; *reserving however, the option at any time of settling the claim or paying the amount of this policy in full.*

(Italics ours.)

Paragraph 3 provides:

The Company may at any time pay this policy in full, whereupon *all liability* of the Company shall terminate. Every payment made by the Company, exclusive of costs incurred by the Company as an incident to defense or settlement of claims hereunder, shall reduce the liability of the Company by the amount paid. The liability of the Company shall in no case exceed the actual loss of the insured and costs which the Company is obligated to pay.

(Italics ours.)

The court held that under the title insurance policy, Transamerica had the option to pay the policy limits in full and terminate all further liability, including any ongoing liability for defense costs.

Consequently, the court entered an order denying the Batdorfs' and the Kortlevers' motion for summary judgment and granted Transamerica's motion for summary judgment.

The issue presented is whether Transamerica's duty to defend its insureds in an action brought against them attacking their title survives Transamerica's tender to the insureds of the face amount of their title insurance policies.

Since the parties agree that the material facts are undisputed, we review only whether the facts require upholding the summary judgment as a matter of law. *Fahn v. Cowlitz Cy.*, 93 Wn.2d 368, 373, 610 P.2d 857 (1980); *Tri–State Constr., Inc. v. Columbia Cas. Co./CNA*, 39 Wn. App. 309, 312, 692 P.2d 899 (1984). Although ambiguities in insurance policies are to be interpreted in favor of the insured, *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 913, 631 P.2d 947 (1981); *Abbott v. General Accident Group*, 39 Wn. App. 263, 267, 693 P.2d 130

(1984), language which is clear and unambiguous must be given effect in accordance with its plain meaning and may not be construed by the courts. *Progressive Cas. Ins. Co. v. Jester,* 102 Wn.2d 78, 79–80, 683 P.2d 180 (1984); *Abbott,* at 267. When interpreting language of an insurance contract, the entire contract is to be construed together for the purpose of giving force and effect to each clause. *Neer v. Fireman's Fund Am. Life Ins. Co.,* 103 Wn.2d 316, 320, 692 P.2d 830 (1985). The language in this contract is not ambiguous, either clause by clause or when all clauses are taken together. "[T]he policy clearly gave Transamerica the *option* to settle adverse claims, pay its insured the policy limits or defend to judgment." *Securities Serv., Inc. v. Transamerica Title Ins. Co.,* 20 Wn. App. 664, 672, 583 P.2d 1217 (1978), interpreting a clause identical to paragraph 1 in this case in a contract where the title clause and paragraph 3 were also the same as here. Indeed, "[t]itle policies of the kind issued by Transamerica in this case do not guarantee or insure a clear title or that there will be no losses." *Securities,* at 669. The contract is one of indemnity only. *Securities,* at 670. The exercise of one of the contract's options by Transamerica rules the other two options out. In determining whether the insurer has a duty to defend, the test to be applied is whether the facts alleged in the complaint, if proved, would render the insurer liable under the policy. *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 741, 504 P.2d 1139 (1973); *Transamerica Ins. Co. v. Preston,* 30 Wn. App. 101, 103, 632 P.2d 900 (1981). By paying up, the insurer removed *all* of its further liability. Therefore, attorneys' fees, incurred *after* the payment, were incurred about a "claim" which was no longer covered by the policy. Therefore, absent a duty to defend there can be no breach and without a breach of duty to defend, Transamerica cannot be held liable for attorneys' fees incurred after it paid up the policy limit.

The judgment is affirmed.

GROSSE and WEBSTER, JJ., concur.

Review denied by Supreme Court August 16, 1985.