[No. 9828-1-III. Division Three. March 22, 1990.]

VIKING INSURANCE COMPANY OF WISCONSIN, *Appellant*, v. WAYNE HILL, JR., *Individually and as Guardian*, ET AL, *Defendants*, ARTHUR W. KIRSCHENMANN, *as Trustee, Respondent.*

---

*Blaine Gibson* and *McArdle, Dohn, Talbott, Simpson & Gibson, P.S.,* for appellant.

*Paul Stritmatter* and *Stritmatter, Kessler & McCauley,* for respondent.

SHIELDS, J.—In a summary judgment proceeding, Viking Insurance Company of Wisconsin was held liable as a matter of law for bad faith in its failure to defend its insured, Douglas K. Detwiler. Viking appeals; we reverse.

On June 14, 1985, when both men were intoxicated, Mr. Detwiler permitted Chester Beutel to drive his automobile. While driving the vehicle, Mr. Beutel hit pedestrian Lori Hill who was jogging off the side of the road, causing her severe personal injury. On or about July 10, Mr. Detwiler was sued by Ms. Hill and her family on several grounds,

including negligent entrustment of his automobile to Mr. Beutel. On July 24, Steven Lathrop, the attorney representing Mr. Detwiler in the related criminal proceedings, served counsel for Ms. Hill with a notice of appearance in the civil action. Mr. Detwiler had consulted Mr. Lathrop after being advised by Viking that the damages would substantially exceed the policy limits and that he should consult independent counsel.

Viking hired Paulsen Claim Service to conduct an investigation. On August 16, attorney Paulsen recommended that Viking hire substitute counsel. During the ensuing months, correspondence continued between counsel for Ms. Hill and Viking. On November 21, Viking was informed that Ms. Hill would not accept a structured settlement, but wanted cash. Counsel for Ms. Hill refused to sign a release and advised Viking it should be prepared to defend both Mr. Detwiler and Mr. Beutel. By letter dated December 18, 1985, Viking offered to pay the policy limits of $25,000, but further stated "Your client[']s refusal to sign a release of all claims creates some legal questions which I am not qualified to answer." Mr. Lathrop was also sent a copy of this letter. On December 26, attorney G. Thomas Dohn, on behalf of Viking, made an informal appearance and requested the matter be settled to avoid unnecessary expense. On April 2, 1986, Viking, through substituted counsel Blain Gibson, again offered to pay the policy limits in exchange for a release. Counsel for Ms. Hill again refused to sign a release because of the "permanent and devastating brain damage" suffered by Ms. Hill.

On May 20, 1986, Viking filed this interpleader action, alleging that the policy which insured Mr. Detwiler provided for a bodily injury liability limit of $25,000. Viking offered to tender the policy limits into the registry of the court in exchange for an order relieving Viking of any further obligation under its policy.

On May 27, 1986, Mr. Detwiler signed a release relieving Viking of its duty to defend in exchange for payment of

$1,000. In his affidavit, Mr. Lathrop averred that he had negotiated the release on Mr. Detwiler's behalf:

> It was obvious to me that the claim being made by Lori Hill and her family would ultimately result in a judgment against Mr. Detwiler for a very large sum of money, a sum which would greatly exceed his $25,000.00 limits with Viking. It was my opinion that this would be true even if Mr. Detwiler were provided with the most vigorous defense. For this reason, I negotiated on behalf of Mr. Detwiler an agreement with Viking that, in exchange for a release of all of Viking's obligations to Mr. Detwiler, including any possible obligation to defend him, Viking would pay Mr. Detwiler $1,000.00. In reaching this agreement, I realized, and I am confident Mr. Detwiler also realized, that if Viking provided a defense there would still be a judgment against Mr. Detwiler that far exceeded the amount Viking would be obligated to pay. Consequently, whether or not Mr. Detwiler was provided with a defense, he would still have to file bankruptcy. I discussed the matter fully with Mr. Detwiler and he and I agreed that he would be better off receiving $1,000.00 from Viking than he would be if he received a defense. With the $1,000.00, he could afford to file bankruptcy.

On June 25, 1986, Mr. Detwiler's deposition was taken by counsel for Ms. Hill; no attorney was present on his behalf.

On August 18, 1987, Viking filed an amended complaint asking for an additional declaratory ruling absolving Viking from its duty to defend Mr. Detwiler or Mr. Beutel.[1] On October 5, Viking paid $1,000 to Mr. Lathrop on behalf of Mr. Detwiler[2] in exchange for delivery of the signed release to Viking.[3] That same day, Viking moved for summary judgment; the trial court heard arguments and denied the

---

[1] It is not clear from the record whether Mr. Beutel signed a release.

[2] The record discloses the check was drawn September 10 but Mr. Lathrop avers he did not receive it until October 5.

[3] Arthur Kirschenmann, the trustee in Mr. Detwiler's bankruptcy, was informed of the release on February 2, 1988, prior to his substitution as a party to the interpleader action on May 2. Thus, there was no reason for Viking to communicate with Mr. Kirschenmann regarding its contractual relationship with its insured.

motion on October 21. There was no appeal from this ruling. Viking then deposited the $25,000 into the registry of the court.

Mr. Detwiler appeared pro se at trial on October 28, 1987.[4] Damages of $6,149,641.34 were awarded Ms. Hill less offsets which resulted in judgment against Mr. Detwiler for $4,447,000.34. After trial but prior to entry of judgment, Mr. Detwiler filed a petition in bankruptcy on November 4, 1987, and listed the Hill judgment as a liability and the cause of action against Viking for failure to defend as an exempt asset valued at $1,000.[5]

On May 2, 1988, Arthur Kirschenmann, the trustee in Mr. Detwiler's bankruptcy, and his attorney, Paul Stritmatter (also the attorney representing Ms. Hill), moved the court for an order substituting Mr. Kirschenmann as the party–defendant in place of Mr. Detwiler.[6] An order allowing the substitution was signed by the court on May 2. On that same day, Mr. Kirschenmann filed an answer and

---

[4]In his affidavit in support of summary judgment, counsel for Ms. Hill averred the trial was scheduled to last for 3 weeks, but because Mr. Detwiler appeared without counsel, an oral decision was rendered against him on the first day. Judgment was entered on November 9, 1987.

[5]On Amended Schedule B–2—Personal Property (q) the description reads as follows:
> Cause of action against Viking Ins. Co., for failure to provide debtor with a defense in Kittitas County Cause No. 85–2–00198–5, as set forth in Paragraph 10, of Statement of Financial Affairs.
> Market Value: $1,000.00

On Amended Schedule B–4—Property claimed as exempt, the description reads as follows:
> Cause of action against Viking Ins. Co., for failure to provide debtor with a defense in Kittitas County Cause No. 85–2–00198–5, as set forth in Paragraph 10, of Statement of Financial Affairs.
> Value claimed exempt: $1,000.00

[6]An order approving Mr. Kirschenmann's appointment in pursuing the action against Viking was entered by the Bankruptcy Court on January 27, 1988. Thus, there is no question with respect to the state court's jurisdiction to hear the matter.

counterclaim to the interpleader proceeding, alleging that Viking had a duty to defend Mr. Detwiler regardless of any tender of the insurance policy limits. In his prayer for relief, Mr. Kirschenmann claimed damages in the sum of $4,447,000.34. On December 7, 1988, Mr. Kirschenmann moved for summary judgment as to Viking's liability for a breach of duty to defend and bad faith and a declaration of the legal standard for determining damages. The court found bad faith as a matter of law because of Viking's refusal to defend. The court further ordered "[d]amages shall be determined at trial pursuant to the legal standard established by separate order of this court." In a companion order filed the same day, the trial court ordered that

> damages will be established by a determination of the difference between the judgment entered against Douglas K. Detwiler in the amount of $4,447,000 . . . and the reduction in that judgment that would probably have been secured if Douglas K. Detwiler had been provided a lawyer and a defense under the Viking insurance policy which would have challenged the case by Lori Hill and her family . . ..

For present purposes, we assume Mr. Kirschenmann has standing as trustee in bankruptcy to pursue this action even though not a party to the insurance contract.[7] One issue is dispositive: Did Viking have a duty to defend in light of its tender of the policy limits and the release signed by Mr. Detwiler?

Generally, insurers have a duty to defend any complaint alleging facts which, if proven, would render the insurer liable for indemnification of its insured. *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 197, 743 P.2d 1244 (1987); *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 486, 687 P.2d 1139 (1984). The duty to defend is

---

[7]*See Murray v. Mossman*, 56 Wn.2d 909, 912, 355 P.2d 985 (1960) (no damage to claimant when insurer refused to settle and judgment was awarded in excess of policy limits); *Tank v. State Farm Fire & Cas. Co.*, 38 Wn. App. 438, 446, 686 P.2d 1127 (1984) (judgment creditor did not have standing to bring bad faith action and consumer protection act claim against insurance company), *aff'd in part, rev'd in part*, 105 Wn.2d 381, 715 P.2d 1133 (1986).

broader than the duty to indemnify because it is anteced-
ent to and independent of the duty to indemnify. *Collum v.
State Farm Fire & Cas. Co.,* 155 A.D.2d 581, 547 N.Y.S.2d
423 (1989); *Boston Symphony Orchestra, Inc. v. Commer-
cial Union Ins. Co.,* __ Mass. __, 545 N.E.2d 1156 (1989).
An insurer denying a duty to defend has the burden to
establish as a matter of law on a summary judgment motion
that the injury complained of falls outside the indemnity
coverage of the policy or that claims against the insured are
unambiguously exempted from coverage. *Munzer v. St.
Paul Fire & Marine Ins. Co.,* 145 A.D.2d 193, 538 N.Y.S.2d
633, 636 (1989). The duty to defend is determined by a
review of the allegations on the face of the pleading which
give rise to the covered action. "Thus, the duty to defend
hinges not on the insured's potential liability to the claim-
ant, but rather on whether the complaint contains *any* fac-
tual allegations rendering the insurer liable to the insured
under the policy." (Italics ours.) *Emerson,* at 486.

Mr. Detwiler's insurance policy contained the following
provision with respect to the duty to defend:

> Additional Benefits
> These benefits are in addition to our limit of liability for
> *damages.* We'll pay for the cost of investigating the *car acci-
> dent* and arranging for the settlement of any claim against *you.*
> We'll also defend *you,* hire and pay a lawyer, and pay all
> defense costs if *you're* sued by someone for *damages* because of
> a *car accident*—even if the accusations aren't true.

There is no dispute Ms. Hill's complaint alleging negligent
entrustment obligated Viking to defend Mr. Detwiler.
However, Viking contends its duty was terminated because
of its tender of the policy limits and the release from the
duty to defend signed by Mr. Detwiler.

### TENDER OF THE POLICY LIMITS

 Viking asserts any duty to defend ended when it
unilaterally deposited the $25,000 into the registry of the
court, because of the following policy provision:

> However, we won't be obligated to pay for the cost of any fur-
> ther investigation or arrangement for settlement or to defend

*you* further after we've paid our entire limit of liability for *damages.*

Similar policy language has been held to be nontechnical and unambiguous. *See Johnson v. Continental Ins. Cos.,* 202 Cal. App. 3d 477, 248 Cal. Rptr. 412, 414 (1988); *Pareti v. Sentry Indem. Co.,* 536 So. 2d 417, 420 (La. 1988).

Here, Viking paid its "entire limit of liability for *damages*" into the registry of the court before Mr. Detwiler's liability for damages had been determined and reduced to judgment. The question presented is whether the policy provision terminating the duty to defend upon such payment is void as against public policy. Unless the provision violates public policy, it should be enforced. *Emerson,* at 481.

### PUBLIC POLICY

In *Lumbermen's Mut. Cas. Co. v. McCarthy,* 90 N.H. 320, 8 A.2d 750, 126 A.L.R. 894 (1939) the court held that, upon satisfying a judgment by tendering the policy limits, an insurer was relieved of its duty to defend. *Lumbermen's,* 90 N.H. at 323–24, went on to note:

> This does not necessarily mean that the insurer may elect to pay the full limit of its coverage to the insured and thereby cast upon his shoulders the full burden of investigation, settlement or defense from the beginning. . . . Neither do we mean to hold that an insurer may abandon its defense of a claim within the terms of its policy in mid–course and under circumstances which are prejudicial to the rights of the insured.

The courts appear split on the issue whether the duty to defend exists beyond payment of the policy limits. *See* 27 A.L.R.3d 1057 (1969); *Johnson,* 248 Cal. Rptr. at 416. However, the opinions have uniformly recognized the avoidance of the duty is dependent upon whether a judgment or settlement has been reached with the injured party *or* the permission of the insured has been obtained to forego the duty to defend. *See Samply v. Integrity Ins. Co.,*

476 So. 2d 79 (Ala. 1985);[8] *Conway v. Country Cas. Ins. Co.,* 92 Ill. 2d 388, 442 N.E.2d 245 (1982); *Delaney v. Vardine Paratransit, Inc.,* 132 Misc. 2d 397, 504 N.Y.S.2d 70 (1986). Compare *Batdorf v. Transamerica Title Ins. Co.,* 41 Wn. App. 254, 258, 702 P.2d 1211, *review denied,* 104 Wn.2d 1007 (1985) which held a title insurance indemnity policy which allowed the insurance company to settle, pay policy limits *or* defend, did not have to defend when one of the other options was selected.

In *Pareti,* 536 So. 2d at 423, the court noted public policy would not void such a provision. Rather, the court found protection of the insured from inappropriate settlements or court action rests upon the insurer's

> high fiduciary duty to discharge its policy obligations to its insured in good faith—including the duty to defend the insured against covered claims and to consider the interests of the insured in every settlement.

Thus, while the policy may specifically provide for termination of the duty to defend upon payment of the policy limits, public policy requires the insurer to act in good faith in the interest of the insured. Since Viking made a unilateral payment to the registry of the court of the policy limits without a settlement agreement with Ms. Hill and before

---

[8]Two cases were noted in *Samply* which did not mention the existence of a settlement or judgment: *Commercial Union Ins. Co. v. Adams,* 231 F. Supp. 860 (S.D. Ind. 1964) and *National Union Ins. Co. v. Phoenix Assur. Co.,* 301 A.2d 222 (D.C. 1973). In *Commercial,* the action was brought by numerous injured plaintiffs against the tortfeasor's insurance company on the theory that any costs of defense saved by the insured could be used to augment their recovery of damages. The court questioned their standing to sue, noting they were not parties to the original contract of insurance. It also ruled that the duty to defend terminated upon tender of the policy limits.

In *National Union,* the action was brought by the excess carrier who was seeking reimbursement. The court noted the insurance company, after having investigated and defended the cause of action in good faith, tendered the policy limits and at that point, its duty to defend terminated. The court also noted the insured had incurred no expense after the withdrawal and had made no claim against the insurer.

entry of a court judgment against Mr. Detwiler, whether
Viking exercised good faith in the interest of Mr. Detwiler
presents an issue of fact, unless the issue is rendered moot
by the release.

## RELEASE

Mr. Kirschenmann contends the release[9] is evidence of
bad faith, citing *Betts v. Allstate Ins. Co.,* 154 Cal. App. 3d
688, 705, 201 Cal. Rptr. 528 (1984). *Betts,* however,
involved the reasonableness of the insurer's refusal to settle
in light of the excess exposure to its insured. Thus, *Betts*
does not support Mr. Kirschenmann's contentions regard-
ing the duty to defend.

Mr. Kirschenmann also argues the release is void because
it violates the public policy of RCW 46.29.490.[10] He asserts

---

[9]The applicable sections of the release state:

"5. Douglas K. Detwiler and Viking Insurance Company have agreed that,
upon payment by Viking Insurance Company to Detwiler of the sum of $1,000.00,
Detwiler will release Viking Insurance Company from any obligation to investi-
gate or defend Detwiler from claims made against him arising out of the accident
of June 14, 1985.

"SETTLEMENT AND RELEASE

"In consideration of the sum of One Thousand and no/100 Dollars ($1,000.00),
receipt of which is acknowledged, and in consideration of tender into the registry
of the court the sum of $25,000.00, Douglas K. Detwiler releases and forever dis-
charges Viking Insurance Company of Wisconsin from any and all obligations
under the Insurance Policy No. 47 083064, for claims arising out of the accident of
June 14, 1985.

"I understand that, by signing this document, I am giving up all claims I may
have against Viking Insurance Company for benefits of any kind under Policy No.
47 083064, for any losses, damages, or claims which arise out of the accident of
June 14, 1985. I understand that this is all of the money or other benefits I will
receive.

"I HAVE READ THIS RELEASE AND UNDERSTAND IT.

"DATED this 27th day of May, 1986.

"/s/ Douglas K. Detwiler"

[10]RCW 46.29.490(6) states:

"Provisions incorporated in policy. Every motor vehicle liability policy is sub-
ject to the following provisions which need not be contained therein:

"(a) The *liability* of the insurance carrier *with respect to the insurance
required* by this chapter *becomes absolute whenever injury or damage covered* by
said motor vehicle liability policy *occurs*; said policy may not be canceled or
annulled as to such liability by any agreement between the insurance carrier and

it constituted a cancellation or annulment of the policy which breached Viking's contractual duty to Mr. Detwiler. The statute, however, does not refer to a duty to defend.

A contract provision is subject to limitation and invalidation if it is contrary to public policy. *Greer v. Northwestern Nat'l Ins. Co.,* 36 Wn. App. 330, 674 P.2d 1257 (1984), *modified,* 109 Wn.2d 191, 743 P.2d 1244 (1987). In *Greer,* the insurer had sought to exclude coverage for a motorcycle passenger based on its policy which provided for such an exclusion. The court considered whether such an exclusion was violative of public policy. The court upheld the exclusion because the victim was an adult volunteer, significantly increasing the risk to the insurer. *Greer,* 36 Wn. App. at 342. On review by the Supreme Court, the language of the exclusion was found to be ambiguous. Because the court could not determine the parties' intent, the exclusion was construed against the insurer and coverage for the passenger was ordered. Having determined the insurer breached its contractual duty to defend, the court determined damages were limited to the policy limits, rather than the amount of the judgment entered in the underlying action. *Greer,* 109 Wn.2d at 202. Here, there is neither an attempt to exclude liability coverage for Ms. Hill nor is the policy provision ambiguous. The provision of the policy before us seeks only to limit liability coverage to a specific dollar amount and terminate the duty to defend after payment of the policy limits. Any damages which may have been incurred are limited to the policy limits which have been deposited with the court. *Greer,* 109 Wn.2d at 202–03. As noted in *Emerson,* at 481:

> While questioning the wisdom of certain exclusion clauses, we have been hesitant to invoke public policy to limit or avoid express contract terms absent legislative action. *Progressive Cas. Ins. Co. v. Jester,* 102 Wn.2d 78, 683 P.2d 180 (1984). "In

the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy defeats or voids said policy." (Italics ours.)

general, a contract which is not prohibited by statute, condemned by judicial decision, or contrary to the public morals contravenes no principle of public policy." 17 C.J.S. *Contracts* § 211, at 1024 (1963).

█ The release and waiver of the duty to defend is not violative of the public policy of RCW 46.29.490. It is a good faith settlement of the contractual obligation owed by Viking in the interest of its insured, Mr. Detwiler. It was negotiated on Mr. Detwiler's behalf on the initiative of his attorney, Mr. Lathrop, after full disclosure to and consent by Mr. Detwiler. There is no evidence or inference the release was the product of fraud, coercion, mistake or negligent misrepresentation by Viking. Nor is there any statement from Mr. Detwiler expressing his dissatisfaction with the release. At the hearing on Viking's motion for summary judgment, Viking relied on its policy provision terminating its duty to defend. After the motion was denied, it nevertheless paid the policy limits into the court registry. Thus, there was no reason for Viking to disclose the existence of the release to the court during that argument. Furthermore, the consideration obtained from Viking by Mr. Detwiler was disclosed on the bankruptcy schedules he filed on November 4, 1987.

Had the release not been signed, the only potential damage to Mr. Detwiler would have been the loss of the $1,000 necessary to file bankruptcy when the judgment was executed. Signing the release and obtaining that necessary amount of money was in his interest as the insured. Mr. Kirschenmann has failed to show how the most vigorous of defenses would have affected the need to file bankruptcy.[11]

Finally, the record demonstrates that, from the beginning, Viking attempted to settle this matter by tender of its policy limits. Its investigation of the case was timely and its

---

[11]We question Ms. Hill's attorney's involvement in this action, particularly as it relates to Ms. Hill's interest. We fail to understand how a vigorous defense by Mr. Detwiler would have enhanced her position. She would have had to underwrite the expense of a lengthy trial and defense of the damages she sought. Had there been a defense, it is hard to imagine she would have been awarded the $6 million judgment she did receive.

assessment of the damages was reasonable. At one point, Viking offered a structured settlement of the policy limits, which would have generated a sum in excess of the policy limits for Ms. Hill. Because of Viking's repeated attempts to settle the matter and because Mr. Kirschenmann has failed to demonstrate any damage incurred by Mr. Detwiler, the trial court erred when it entered judgment in favor of Mr. Kirschenmann. *See Murray v. Mossman,* 56 Wn.2d 909, 914, 355 P.2d 985 (1960).[12]

Having concluded Viking did not owe an obligation to defend Mr. Detwiler, it is not necessary to address the other issues raised by Viking. The summary judgment orders are reversed and the matter remanded to the trial court for entry of judgment for Viking and disbursement of the $25,000 in the court registry for the benefit of Ms. Hill.

GREEN, A.C.J., and THOMPSON, J., concur.

---

[12]Viking also asserts it had no duty to defend because Mr. Beutel was under the age of 25. We decline to address this argument because of our holding on the issues discussed above. *But see Continental Cas. Co. v. Weaver,* 48 Wn. App. 607, 613, 739 P.2d 1192 (1987); *St. Paul Fire & Marine Ins. Co. v. Circle Bar J Boys' Ranch, Inc.,* 1 Wn. App. 377, 379, 461 P.2d 567 (1969), *review denied,* 77 Wn.2d 962 (1970).