[No. 6821-8-III. Division Three. December 19, 1985.]

VICTOR J. FELICE, *Appellant,* v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, *Respondent.*

*Victor J. Felice,* pro se.

*Gary R. Eliasen, Tyna L. Ek,* and *Merrick, Hofstedt & Lindsey,* for respondent.

McINTURFF, A.C.J.—This case involves a dispute between an attorney, Victor Felice, and his malpractice insurance carrier, St. Paul Fire and Marine Insurance Company. The issues concern the scope of coverage and the duty an insur-

ance company has to appeal an unfavorable trial court decision. Mr. Felice claims the trial court erred in granting St. Paul summary judgment. We affirm.

In August 1981, Charles Kreck,[1] a longtime friend of Verna Cambern, an 86-year-old widow, advised Mr. Felice that Mrs. Cambern's life was in danger, her assets were being squandered by family members, and he was of the opinion the family intended to kill Mrs. Cambern.

Over Mr. Felice's objections, on August 27, 1981, Mr. Kreck took Mrs. Cambern to Portland, Oregon, and refused to return her to Spokane. Three months later, on December 11, 1981, relatives discovered her in Portland. Connie Beck, a grandniece of Mrs. Cambern, went to Mr. Kreck's Oregon residence with a police sergeant. Mr. Kreck was not present. The house was dirty, with animal excrement and rotting food throughout the living quarters. Additionally, Mrs. Cambern was incoherent, dirty and bruised up and down her arms. Ms. Beck brought Mrs. Cambern to Spokane, where she was placed in a nursing home.

Meanwhile, in September 1981, Mr. Felice petitioned for his appointment as guardian of Mrs. Cambern's person and estate, utilizing an August 1981 psychiatrist's report in which she was described as incompetent. The petition was served upon Mrs. Cambern, but did not list family members, nor was it served upon any of them. On September 9, 1981, the court appointed Mr. Felice guardian of Mrs. Cambern.

On November 20, 1981, Dorothy Ryder, Mrs. Cambern's niece, moved for appointment of a guardian ad litem and for an order vacating Mr. Felice's appointment as guardian,

---

[1] In 1974, Mr. Kreck was convicted of the 1971 murder of his wife. Mr. Felice represented Mr. Kreck during his state appeals. *State v. Kreck,* 86 Wn.2d 112, 542 P.2d 782, *rev'g* 12 Wn. App. 748, 532 P.2d 285 (1975). In 1980, upon application for federal habeas relief, Mr. Kreck was released from the penitentiary. This ruling has been affirmed. *Kreck v. Spalding,* 721 F.2d 1229 (9th Cir. 1983). Upon his release, Mr. Kreck voluntarily admitted himself to Eastern State Hospital where he was diagnosed as a paranoid schizophrenic. He was released within 1 week.

pending the guardian ad litem's report. In December 1981, a guardian ad litem was appointed. The court order also provided that Mr. Felice remain as guardian, but that he "consult" the guardian ad litem on all guardianship actions until further order of the court. Mr. Felice testified he ignored this directive.

On February 2, 1982, the guardian ad litem filed his report, recommending the appointment of grandniece Bonnie Peters as Mrs. Cambern's personal guardian, and brother Charles Beck as guardian of the estate. At that time, Bonnie Peters offered to pay Mr. Felice $1,500 in attorney fees if he would voluntarily withdraw as guardian. Mr. Felice, however, refused, unless his $2,500 fee was paid in full. In April 1982, without consulting the guardian ad litem, Mr. Felice presented an order which was signed by the court, ex parte, approving various disbursements, including $2,500 in temporary attorney fees.

On May 6, Ms. Peters filed an amended petition for involuntary removal of Mr. Felice as guardian, and for the return to the Cambern estate of the $2,500 attorney fees. The court ordered Mr. Felice to appear May 14, and at that time Mr. Felice advised the court he had no counsel. The court nevertheless set trial for May 20, but advised Mr. Felice that a continuance would be considered if necessary. Mr. Felice did not inform St. Paul of the pending guardianship removal action. Rather, he asked his associate to represent him. After the court relieved the associate for a potential conflict of interest, Mr. Felice decided not to contact St. Paul but instead "chose" to represent himself at trial commencing May 20. After a fragmented trial held in June and July, the court removed Mr. Felice as Mrs. Cambern's guardian, and ordered the $2,500 in attorney fees awarded in April returned to the Cambern estate.

Mr. Felice did not inform St. Paul of the guardianship removal action until December 1982, approximately 7 months after trial began. St. Paul rejected his tender of defense and Mr. Felice appealed the involuntary guardianship removal decision pro se. This court affirmed the trial

court judgment. *In re Estate of Cambern,* unpublished opinion noted at 37 Wn. App. 1080 (1984).

Mr. Felice then commenced this action against St. Paul, seeking $18,183 in attorney fees for an alleged breach of the company's duty to defend. These fees were sought as compensation for the time and effort Mr. Felice expended as an attorney in the defense and appeal of the guardianship removal action. The trial court dismissed St. Paul by summary judgment because: (1) the guardianship removal action was not covered by the St. Paul professional liability policy because the action was one to remove Felice as guardian, not to seek compensation for any loss resulting from Mr. Felice's legal services; and (2) Mr. Felice's prejudicial breach of the cooperation clause in the liability insurance policy discharged any duty St. Paul may have had to defend.

First, Mr. Felice contends the guardianship removal action was covered by the policy. Insurance policies are to be construed in accordance with the general rules applicable to other contracts, the interpretation being a question of law. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 480, 687 P.2d 1139 (1984); *Kelly v. Aetna Cas. & Sur. Co.,* 100 Wn.2d 401, 407, 670 P.2d 267 (1983); *Ryan v. Harrison,* 40 Wn. App. 395, 396–97, 699 P.2d 230 (1985). Unless an ambiguity in the contract exists and contradictory evidence is introduced to clarify the ambiguity, summary judgment is proper even though the parties disagree as to the legal effect of the provision in question. *Ryan,* at 397; *Greer v. Northwestern Nat'l Ins. Co.,* 36 Wn. App. 330, 334, 674 P.2d 1257 (1984). Although ambiguities in insurance policies are to be interpreted in favor of the insured, *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 95 Wn.2d 909, 913, 631 P.2d 947 (1981); *Batdorf v. Transamerica Title Ins. Co.,* 41 Wn. App. 254, 257, 702 P.2d 1211 (1985); *Abbott v. General Accident Group,* 39 Wn. App. 263, 267, 693 P.2d 130 (1984), clear and unambiguous language must be given effect according to its plain meaning and may not be construed by the courts. *Progressive Cas. Ins. Co. v.*

*Jester,* 102 Wn.2d 78, 79–80, 683 P.2d 180 (1984); *Batdorf,* at 258. When interpreting language of an insurance contract, the entire contract is to be construed together for the purpose of giving force and effect to each clause. *Neer v. Fireman's Fund Am. Life Ins. Co.,* 103 Wn.2d 316, 320, 692 P.2d 830 (1985).

The pertinent language of the contract reads:

> We'll pay amounts you . . . are legally required to pay to compensate others for loss resulting from legal or notary services you provided or should have provided. This includes loss caused by any person whose acts you're legally responsible for.
> Legal services include those you perform while serving in a fiduciary capacity such as: . . . guardian.

Mr. Felice suggests the language is ambiguous because reasonable persons could disagree whether the language extends coverage in actions to discharge guardians. But examining the entire policy, we conclude the language in the contract is not ambiguous, either clause–by–clause or when all clauses are construed together. The policy provides coverage when Mr. Felice is "legally required to pay to compensate others for loss resulting" from his negligent rendering of services.

The general rule is that insurers who have reserved the right and duty to defend are obliged to defend any suit in which the insured is *legally liable to pay* third parties in connection with risks covered by the policy. *See, e.g., State Farm Gen. Ins. Co. v. Emerson, supra* at 486; *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 741, 504 P.2d 1139 (1973); *Batdorf,* at 258. But this protection usually is not extended to mandamus or injunction types of proceedings which usually have as an objective the compelling of some action by the insured. *Seaboard Sur. Co.,* at 744; 14 G. Couch, *Insurance* § 51:37 (2d ed. 1982 & Supp. 1984); Annot., *Liability Insurer's Duty To Defend as Including Injunction Proceedings,* 53 A.L.R.2d 1132 (1957 & Supp. 1984).

The action brought by Bonnie Peters was in the nature

of a writ of mandamus[2] because its purpose was to discharge Mr. Felice as guardian and compel him to return funds he allegedly had wrongfully taken as compensation for his services. The petition did not contain allegations concerning actual or direct damages nor a prayer for monetary relief. Rather, it contained reasons which would seem to negate a prayer for relief in the form of damages.[3] It sought his removal as guardian and repayment of the attorney fees. Hence, we hold the policy language at issue here was not intended to cover situations where third parties seek to discharge an attorney as guardian. The Superior Court was correct in concluding that this "was not a proceeding to recover for loss occasioned by the petitioner in that case . . . the action sought here was really simply that of removal of Mr. Felice as guardian."

Even if St. Paul had a duty to defend Mr. Felice in the involuntary removal action, his failure to provide St. Paul notice of the impending action also precluded coverage. The breach of a cooperation clause may be considered substantial and material, and may affect the release of an insurer from its responsibilities if the insurer was actually prejudiced by the insured's actions or conduct. *Oregon Auto. Ins. Co. v. Salzberg,* 85 Wn.2d 372, 377, 535 P.2d 816 (1975); *Pulse v. Northwest Farm Bur. Ins. Co.,* 18 Wn. App. 59, 62, 566 P.2d 577 (1977); *see also* Annot., *Modern Status of Rules Requiring Liability Insurer To Show Prej-*

---

[2]Mandamus is a command issuing to an inferior tribunal, corporation, board or person "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station". RCW 7.16.160.

[3]At oral argument Mr. Felice contended Ms. Peters' action was essentially a claim for monetary relief because her complaint asked for such other and further relief the court may deem just and equitable, citing *Hos Bros. Bulldozing, Inc. v. Hugh S. Ferguson Co.,* 8 Wn. App. 769, 773, 508 P.2d 1377 (1973). There, a bulldozing company sought to foreclose a lien and in its claim for relief requested "'such other and further relief as to the court may seem just and proper.'" *Hos Bros.,* at 773. The court awarded $4,000 attorney fees although the plaintiffs requested only $1,500. That case is different from the facts here because Ms. Peters did not pray for damages. Rather, she sought return of funds which were allegedly wrongfully taken.

*udice To Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers,* 32 A.L.R.4th 141, 166–67 (1984 & Supp. 1985). "[P]rejudice will be presumed only in extreme cases and is, in fact, an issue upon which one claiming prejudice has the affirmative burden of proof." *Pulse,* at 62; *see also Oregon Auto.,* at 377.

Under the circumstances here, we find that a 6–month delay in notifying the company after the original summons and complaint were served, when Mr. Felice knew of the potential insurance coverage, was an unreasonable delay and does not substantially comply with the terms of the insurance contract. But was St. Paul prejudiced by the delay? The issue of "prejudice" is generally a material issue of fact, which would preclude summary judgment. We hold there was prejudice as a matter of law.

In *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.,* 50 Wn.2d 443, 313 P.2d 347 (1957), the court considered similar facts. There, the insured failed to notify the insurer of a claim for 13 months even though the insured knew it had liability insurance covering the occurrence. In dicta, the court concluded the insured prejudiced the insurer by failing to notify it of the pending claim until 1 week before trial. The court posited that the insurance company had reserved to itself the right to have the case investigated, prepared, and presented by counsel of its own choosing. To be deprived of that right constituted prejudice. *Sears, Roebuck,* at 454.

On May 6, 1982, Mr. Felice was served with a petition for his involuntary removal as Mrs. Cambern's guardian and for the return to the estate of the $2,500 award of attorney fees he had obtained ex parte. On May 14, Mr. Felice advised the court he did not have counsel. He did not contact St. Paul before, during or immediately after trial; rather, he "chose" to represent himself at trial.

Following an unfavorable decision, Mr. Felice filed his notice of appeal December 9, 1982, and did not notify St. Paul of the claim or the unfavorable decision until

December 15, which was 1 day before the end of the 30–day appeal period.

Simply stated, this delay prejudiced the company because it was precluded from investigating and evaluating the case prior to, during and after trial. This case is unlike *Pulse,* where the Pulses defended themselves without knowing the claim was covered by their "Country Squire" insurance policy. Nor is this case similar to *Oregon Auto.* in which the insurance company had the opportunity to investigate, prepare and defend a claim against the insured.

Similarly, *Thompson v. Grange Ins. Ass'n,* 34 Wn. App. 151, 660 P.2d 307 (1983) is distinguishable. There, Mr. Thompson was injured in an accident caused by an uninsured motorist. He failed to notify Grange of the claim "as soon as practicable." Our court determined the breach of the cooperation clause did not discharge the insurer because it never demonstrated the uninsured motorist had any assets it might have recovered had they pressed a claim. Hence, even if Grange would have had the opportunity to investigate and make claim against the uninsured motorist, there was no proof it would have benefited from that opportunity.

Here, Mr. Felice believed he had coverage, yet defended the action himself because he thought St. Paul would not have enough time to prepare the case. This actually prejudiced St. Paul because it precluded the opportunity to evaluate the facts and determine whether a trial and expenses for an appeal were warranted. *See Sears, Roebuck,* at 454. For these reasons, we hold St. Paul was not obligated to extend Mr. Felice coverage. Accordingly we refrain from addressing at this time whether, and to what an extent, an insurer has a duty to prosecute an appeal.

Finally, Mr. Felice claims there is a genuine issue of fact whether St. Paul denied coverage in "bad faith". RCW 48.01.030 requires insurers to act in good faith, abstain from deception and practice honesty and equity in all insurance matters. An insurer's breach of the duty of good faith also constitutes a violation of the Consumer Protec-

tion Act, RCW 19.86. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978); *Whistman v. West Am.,* 38 Wn. App. 580, 584, 686 P.2d 1086 (1984). Denial of coverage due to a debatable question of coverage, however, is not bad faith giving rise to a Consumer Protection Act violation. *Smith v. Ohio Cas. Ins. Co.,* 37 Wn. App. 71, 75, 678 P.2d 829 (1984); *Miller v. Indiana Ins. Cos.,* 31 Wn. App. 475, 479, 642 P.2d 769 (1982).

Here, Mr. Felice alleges St. Paul acted in bad faith basically because it did not notify him of its decision refusing coverage until 2 months after he informed them of the claim. Although we question St. Paul's dilatory response, delay alone does not constitute bad faith because it did not constitute an unfounded and frivolous denial of benefits. St. Paul could have pressed the appeal, despite this delay, had it determined coverage existed, because Mr. Felice had timely entered a notice of appeal. We have found St. Paul denied coverage based on a reasonable interpretation of the policy, thus it cannot be said the denial was in bad faith. *See Miller,* at 479; 3 J. Appleman, *Insurance* § 1612 (1967 & Supp. 1984).

The judgment of the Superior Court is affirmed.

MUNSON and THOMPSON, JJ., concur.

Review denied by Supreme Court March 7, 1986.