218 N.J. Super. 49 (1987)
526 A.2d 1112
SOLVENTS RECOVERY SERVICE OF NEW ENGLAND, ET AL., PLAINTIFFS,
v.
MIDLAND INSURANCE COMPANY, ET AL., DEFENDANTS, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA., PLAINTIFFS,
v.
THE HOME INDEMNITY COMPANY, DEFENDANT/DEFENDANT-APPELLANT ON THE CROSSCLAIM, SOLVENTS RECOVERY SERVICE OF NEW JERSEY, INC., AND SOLVENTS RECOVERY SERVICE OF NEW ENGLAND, INC., DEFENDANTS/PLAINTIFFS-RESPONDENTS ON THE CROSSCLAIM.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1987.
Decided June 3, 1987.
*50 Before Judges DREIER, SHEBELL and STERN.
Michael J. Frank argued the cause for appellant (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Henry G. Morgan, of counsel; Michael J. Frank, on the brief).
Robert D. Chesler argued the cause for respondents (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys; Robert D. Chesler, of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Appellant, Home Indemnity Company ("Home"), appeals on leave granted from a decision of the Law Division striking *51 certain of its defenses to a crossclaim for declaratory judgment brought by plaintiff, Solvents Recovery Service of New England, Inc., and Solvents Recovery Service of New Jersey, Inc. ("Solvents").
The January 5, 1987 order appealed from in these actions, involving insurance coverage for clean up costs at two waste hazard sites, contains the following rulings: Home "did not and could not suffer any prejudice as a result of late notice ...;" Home's "motion for summary judgment on the issue of late notice is denied ...;" and Solvents' "motion and crossmotion for summary judgment on the issue of late notice are granted in that plaintiffs' alleged breaches of conditions 4(a), 4(b), 4(c) and 5 of its insurance policy with the Home Indemnity Co. shall not foreclose or otherwise interfere with or adversely affect any right to insurance coverages of plaintiffs with respect to Count Two ("Ottati & Goss") and Count Three ("Enviro-Chem") of plaintiffs' amended complaint."
The "Ottati & Goss site" which is the subject of Count Two is a parcel of land in Kingston. New Hampshire. The United States Environmental Protection Agency ("EPA") alleged that the site was used as a chemical waste storage and disposal area in 1978 and 1979. In May 1980 the EPA filed a civil action in the United States District Court for the District of New Hampshire against the owners and operators of the site. On August 13, 1982 third party complaints were filed against Solvents and other companies who had disposed of their allegedly hazardous waste at that site. It was alleged that the site posed an imminent and substantial danger to health and the environment due to the hazardous wastes which were alleged to be stored or disposed of there. The government sought injunctive relief, restitution, and costs from the defendants in order to clean up the site.
Midland Insurance Company ("Midland") provided Solvents with comprehensive general liability insurance from August 22, 1978 until August 22, 1980; National Union Fire Insurance Company ("National Union") provided coverage from August *52 22, 1980 to June 30, 1982; and Home provided it from June 30, 1982 to July 1, 1983.
Between April 1978 and March 1979 Solvents shipped waste to the Ottati & Goss site. By letters dated October 4, 1982 and November 23, 1982 Solvents gave notice of the Ottati & Goss action to Midland. Midland notified Solvents by letter dated December 6, 1982 that it disclaimed coverage and would not assume Solvents' defense in the pending action.
The United States District Court bifurcated trial of the action. The liability portion of the trial lasted over 113 days during 1983 and 1984. On December 9, 1985 Solvents was held strictly liable as a generator of hazardous waste that was deposited at the site. The damages trial of the action commenced on February 1, 1987.
Home became aware of the Ottati & Goss litigation on November 12, 1985 when National Union filed a declaratory judgment action against Home. Home has not attempted to enter the Ottati & Goss action.
Count Three of plaintiffs' declaratory judgment complaint involves the site of Environmental Conservation and Chemical Corporation, formerly Enviro-Chem Corporation ("Enviro-Chem"), a solid waste disposal facility in Zionsville, Indiana. Solvents had shipped waste material to Enviro-Chem for disposal from January 6, 1981 until January 7, 1982.
On May 12, 1982 an Indiana state court, relying on state and federal regulations, ordered Enviro-Chem to cease accepting hazardous waste and to close down. On September 3, 1982 Solvents received notice from the Attorney General of Indiana and on March 23, 1983 from the EPA that Solvents had been a generator of waste at Enviro-Chem. Both notices indicated that if Solvents was found to be a generator, it might be liable for clean-up costs pursuant to 42 U.S.C. § 9601 et seq., as well as other laws.
By letter dated October 4, 1982 Solvents gave notice of the Enviro-Chem matter to National Union. National Union made a *53 preliminary request for further information but never responded to Solvents' demand for coverage. On September 21, 1983 Solvents and approximately 245 other companies entered into a consent decree with the EPA regarding the Enviro-Chem site, which apparently settled all of Solvents' liability at the Enviro-Chem site.
On April 22, 1983 Solvents commenced a declaratory judgment action against Midland Insurance Company and others seeking a declaration that Midland was responsible for defending it in the Ottati & Goss case and for indemnifying Solvents for any liability incurred up to the policy limits. On July 25, 1984 Solvents amended its complaint to add National Union as a defendant and requested a declaration that National Union had a duty to defend and indemnify Solvents with respect to the Enviro-Chem site.
It is undisputed that Home did not receive notice of either the Ottati & Goss or the Enviro-Chem claims until National Union filed its declaratory judgment action against Home in November 1985. Solvents crossclaimed against Home in that action on or about December 16, 1985. Solvents' and National Union's declaratory judgment actions were later consolidated.
The insurance contract between Solvents and Home provides in paragraph 5 that no action shall lie against the company unless as a condition precedent thereto there shall have been full compliance with all of the terms of the policy. Paragraph 4 of the policy, entitled "conditions," enumerates the duties of the insured "in the Event of Occurrence, Claim or Suit." Subparagraph 4(a) requires written notice of an occurrence to include particulars and all reasonably obtainable information. Subparagraph 4(b) requires that, if claim is made or suit is brought against the insured, the insured immediately forward to the company every relevant document. Lastly, subparagraph 4(c) requires the insured to cooperate with the company and assist it upon request. It further provides that "[t]he insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than first aid to *54 others at the time of accident." The parties appear to agree that the facts support the conclusion that Solvents failed to comply with the conditions of subparagraphs 4(a), (b) and (c). There is, however, no allegation that the insured acted other than in good faith throughout.
It is clear that the late notice defenses raised by the carrier under subparagraphs 4(a) and (b) cannot be sustained unless the carrier satisfies the burden of proving that it suffered appreciable prejudice by reason of the insured's failure to comply. Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94-95 (1968); Morales v. National Grange Mut. Ins. Co., 176 N.J. Super. 347, 351-353 (Law Div. 1980). However, the question of whether there may be a disclaimer without proof of prejudice in circumstances where there has been a violation of the condition of subparagraph 4(c), which the parties agree gives the insurer the right to control the defense and settlement of claims brought against the insured, has not been the subject of a reported decision in our state. Appellant argues that we should follow the rulings of those other jurisdictions which have held that as a matter of law the insurer is prejudiced in such circumstances. See Metal Bank of America, Inc. v. Insurance Company of North America, 520 A.2d 493, 498 (Pa.Super. 1987); Lusalon, Inc. v. Hartford Accident and Indemnity Co., 23 Mass. App. Ct. 903, 498 N.E.2d 1373, 1375 ("delay was prejudicial as a matter of law"), review granted 398 Mass. 1106, 503 N.E.2d 35 (1986); Washington v. Federal Kemper Ins. Co., 60 Md. App. 288, 482 A.2d 503, 507 (1984) ("the mere entry of the adverse judgment is affirmative evidence of actual prejudice to the insurer"), cert. den. 302 Md. 289, 487 A.2d 292 (1985). See also Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co., 714 P.2d 562, 564 (Nev. 1986); Felice v. St. Paul Fire & Marine Ins. Co., 42 Wash. App. 352, 711 P.2d 1066, 1070 (1985); Brugnoli v. United Nat'l Ins. Co., 284 Pa.Super. 511, 426 A.2d 164, 168 (1981). But see Colonial Gas Energy System v. Unigard Mutual Co., 441 F. Supp. 765 (N.D.Cal. 1977).
*55 We are not persuaded that where the insured has acted in good faith the consequences of a violation of the condition that the insured cooperate with the company and afford the company the right to control both the litigation and the settlement of claims should weigh any more heavily in favor of forfeiture of coverage, absent a showing of appreciable prejudice, than violations of conditions of subparagraphs 4(a) and 4(b) which require timely notification of the happening of the occurrence and receipt of a claim or suit. Insurance contracts are not truly consensual arrangements; they are available only on a take-it-or-leave-it basis. Cooper, 51 N.J. at 94. We are satisfied that the policy enunciated by our Supreme Court in Cooper, of requiring the carrier to bear the burden of persuasion of a likelihood of appreciable prejudice is the standard that should be applied to a violation of subparagraph 4(c) as well as 4(a) and (b).
The carrier can best demonstrate what action it would have taken that cannot now be accomplished due to the insured's default. Through discovery it should have access to all of the facts including what action the insured and others have taken to protect their mutual interests. If there were any conflicts, dereliction or action which may have affected the result the carrier might have obtained, the insurer has available the necessary expertise to bring it to the attention of the finder of fact. We cannot agree with appellant's per se contention that prejudice is inescapable because of underwriting considerations which will have been interfered with by reason of the failure to apprise the company of the pending claims and litigation. This argument was just as applicable when Cooper was argued and decided. If, as appellant alleges, prospective coverage might properly have been cancelled or rates increased if the insurer had knowledge of the claim, that is an independent matter and should not affect the present issue relating to coverage at the time of a particular occurrence.
The trial court concluded not only that there must be a showing of appreciable prejudice, but also that on these facts *56 Home could not show appreciable prejudice as a matter of law. The court reasoned that Home's interests must have been well protected by the many other companies participating in the Enviro-Chem action and settlement, and that Home had to have been adequately protected since the Ottati & Goss matter was tried extensively.
We do not agree that summary disposition was appropriate on the issue of appreciable prejudice. Considering the varying periods of coverage and the different arguments which might be available as to when the occurrence happened, we cannot say as a matter of law that the interests of the carriers were not inconsistent. In deciding the motion to preclude Home's defenses all inferences must be drawn in its favor. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). Appellant must be afforded an opportunity, if it so desires, to demonstrate factually as well as legally that it suffered appreciable prejudice.
The order of the Law Division dated January 5, 1987 is reversed. We remand to afford appellant the opportunity to demonstrate that it has suffered appreciable prejudice.