ETHICON, INC., Plaintiff,

v.

The AETNA CASUALTY AND SURETY COMPANY, Defendant.

No. 85 Civ. 7640(RO).

United States District Court, S.D. New York.

Oct. 30, 1992.

Patterson, Belknap, Webb & Tyler, New York City (Robert P. LoBue, Rhonda Brown, of counsel), for plaintiff.

Rivkin, Radler, Bayh, Hart and Kremer, Uniondale, N.Y. (Howard J. Newman, Frank J. Giliberti, Daniel Gammerman, of counsel), for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

OWEN, District Judge.

This action was tried before me without a jury from September 30 to October 6, 1992. The following contains my findings of fact and conclusions of law. Plaintiff Ethicon, Inc. is a wholly-owned subsidiary of Johnson & Johnson and is a New Jersey corporation engaged in the business of manufacturing, selling, and distributing surgical and hospital supplies. In this action, Ethicon seeks indemnification for money paid in satisfaction of an $18,900,000 judgment rendered against it in a prior antitrust action, *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282 (9th Cir.1984), and attorneys fees and related expenses of over $1 million. Ethicon claims that since its applicable Aetna policies covered "malicious prosecution", Aetna should assume Ethicon's antitrust liability. The *Handgards* antitrust complaint was filed in 1968. The relevant policies called for immediate notification. Ethicon, however, first noti-

fied Aetna of the suit and sought coverage in 1984, sixteen years later and after two judgments had been rendered, when it accidentally became aware of potential coverage.

■ Aetna bears the burden of persuasion of a likelihood of appreciable prejudice from the insured's late notice, as enunciated by the New Jersey Supreme Court in *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870, 873 (1968); *see also, Costagliola v. Lawyers Title Ins. Co.*, 234 N.J.Super. 400, 560 A.2d 1285, 1289 (Ch.Div.1988); *Solvents Recovery Serv. v. Midland Ins. Co.*, 218 N.J.Super. 49, 526 A.2d 1112, 1115 (App.Div.1987); *Peskin v. Liberty Mutual Ins. Co.*, 214 N.J.Super. 686, 520 A.2d 852, 856–59 (Law Div.1986) (eleven year delay in notifying insurer of alleged claim found to prejudice insurer, and thus plaintiffs held to have breached notice provision of policy as a matter of law).[1] New Jersey courts have explored the variables which must be explored in undertaking an appreciable prejudice analysis. The insurance carrier must show "that substantial rights pertaining to a defense against the claim have been irretrievably lost ... in a case in which notice has been given after the entry of judgment, it cannot reasonably be argued that the carrier has not been prejudiced." *Morales v. National Grange Mutual Ins. Co.*, 176 N.J.Super. 347, 423 A.2d 325, 329 (Law Div.1980). Another factor that courts consider in determining whether appreciable prejudice exists pertains to the likelihood of success of the insurer in defending against the insured's claim. *Morales*, 423 A.2d at 330, *cited with approval in Trustees of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 898 (3d Cir.1987).

As Richard Oatman, claim counsel for Aetna, testified, Aetna was denied rights which caused it substantial prejudice. Oatman testified that had the original complaint been tendered to Aetna in 1968, Aetna would have handled the case pursuant to the then-controlling law in California, the jurisdiction of the antitrust suit, under *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 109, 419 P.2d 168, 173 (1966), which construed an insurer's duty to defend its insured in a lawsuit broadly. The *Gray* Court noted that the nature of the obligation to defend is necessarily uncertain, and no one can determine whether a third party suit falls within the indemnification coverage of the policy until that suit is resolved. Thus, Aetna's practice would have been to accept coverage under a reservation of rights, whereby Aetna would not deny coverage outright, but rather would reserve the right to deny coverage at the close of the action if the facts and legal theories of the case did not develop into any covered under the Aetna policy, or turned out to be within an exclusion (*see, infra*).

Had Aetna been tendered the case in 1968, Oatman stated, they would have established a claim file, undertaken an independent investigation of the facts of the case, and either assigned it to counsel of Aetna's choice to defend or worked with J & J or Ethicon to agree on the use of counsel to defend the case. Aetna would have remained informed on the status of the case, and would have had the opportunity to discuss potential settlement of the case at any time throughout its pendency, particularly between the time the first jury verdict was handed down in 1976 and the Ninth Circuit reversal of that verdict in 1979, when active settlement discussions were taking place. Aetna lost the opportunity to conduct investigations, take depositions, appear at trial, and attempt to settle.

Oatman further stated that even had J & J told Aetna that they did not want to settle the case, Aetna would have probably independently evaluated what they thought might be the exposure from the malicious prosecution standpoint, and tendered its limits—that is, given J & J an outside dollar figure corresponding to that amount, to cap its liability. This policy was corroborated at trial by defense witness Francis McCarthy.

■ Thus, I conclude that Aetna lost the opportunity to keep informed about the

1. The parties have stipulated that New Jersey law is controlling in this case.

progress of the case, to evaluate their covered exposure, and to attempt to settle the case. Aetna was deprived of the opportunity to participate in the selection of counsel, and lost the ability to set loss reserves. Aetna did not retain its files which would have assisted in determining coverage defenses, and lost the ability to have former employees testify on its behalf as to the relevant practices and procedures with respect to claims and underwriting at the time that notice should have been submitted.[2]

Ethicon argues that it handled the case in a responsible and exemplary manner, and that Aetna could have done no better. Roger Fine, a member of the executive committee of J & J, testified at trial that J & J always maintains a large degree of control in lawsuits in which it is involved, even if the insurance company is involved, and would have been similarly involved in the *Handgards* case. He further testified that Aetna and J & J worked well together, and that Aetna was impressed with J & J's ability to handle its own cases. He argued that J & J has a policy of settling cases whenever possible and that it hired some of the nation's preeminent antitrust attorneys to represent it. He therefore contends that Aetna suffered no likelihood of prejudice.

I am not persuaded by this argument. The *Handgards* case was not a situation where Ethicon's liability and the resulting damages were so clear that it would be unfair to preclude Ethicon from recovering against Aetna. Indeed, as Ethicon's witness Fine testified, notwithstanding the first adverse jury verdict, Ethicon and all its legal luminaries were so confident that they would ultimately be victorious that they couldn't believe it when the second jury verdict was more adverse than the

first. Thus, the potential twists that the case might have taken had Aetna been involved are impossible to reconstruct. There is certainly a likelihood that Aetna might have succeeded in settling the case or in capping its own liability had it received timely notice; under these circumstances, permitting any recovery against Aetna would be grossly unjust.

■ Aetna did not in 1984 waive its late notice defense by including a denial of coverage among other reasons for denying coverage in its 1984 letter. In other words, as suggested earlier, when malicious prosecution is alleged against an insured, Aetna will defend, but if it is proven, Aetna will deny payment under the against "public policy" clause of its contract. Both the 1962 and the 1967 Aetna policies contained notice provisions, under which Ethicon was to immediately forward to Aetna every demand, notice, summons or other process received by it or its representatives in order to give notice of any claim or suit to Aetna. By 1984, there having been *two* judgments against its insured for malicious prosecution, Aetna was justified in asserting all defenses without that being construed as a statement of what it would have done if timely notified in 1968.

■ I find that the 1968 antitrust complaint arguably gave sufficient notice that the antitrust suit involved such allegations of the prosecution of false patent litigation as part of an antitrust conspiracy as to have put Ethicon on notice that it had a duty to inform Aetna of the action under the policies' "malicious prosecution" clause. That was clearly so in the amended complaint Handgards filed in 1974. Ethicon breached the notice provision of the applicable insurance policies[3] by failing to pro-

2. From the deposition and testimony of Clinton Greene, it is apparent that Aetna was substantially prejudiced in its underwriting considerations by not being tendered the claim until sixteen years following the filing of the complaint in the *Handgards* antitrust action. However, under New Jersey law, underwriting considerations are not to influence an issue relating to coverage, but rather should be treated as an independent issue. *See Solvents Recovery Serv. v. Midland Ins. Co.*, 218 N.J.Super. 49, 526 A.2d 1112, 1115 (A.D.1987).

3. I need not reach the issue of whether it was the 1962 policy or the 1967 policy that should cover the *Handgards* suit, since I find that the late notice bars all coverage; however, I note that the testimony of Ethicon's economic expert, Dr. Hoffman, at trial failed to convince me that any significant measure of damages flowed from the 1967 Reidy action beyond the earlier patent action, and thus, the 1967 insurance poli-

vide notice as soon as practicable or within a reasonable time—indeed, by providing notice only after two verdicts had been rendered.[4] No "ignorance of coverage" defense can apply when such ignorance was a result of negligence on the part of the insured. *Allstate v. Campbell,* 95 N.J.Super. 142, 230 A.2d 179, 181–82 (Ch.Div. 1967); *see also, Peskin,* 520 A.2d at 857. There is no opportunity for Aetna to regain or even at this far remove to measure the contractual insurance rights and opportunities of which it was deprived by Ethicon's failure to provide timely notice. Aetna has, I conclude, clearly met its burden of showing appreciable prejudice by reason of Ethicon's 16 years' late notice, and accordingly, Ethicon is barred from any recovery. The action is dismissed, with costs and disbursements to the defendant.

So ordered.

---

cy was not materially involved. Coverage under the 1967 policies is limited to the loss arising from the filing of the Reidy action, *see Ethicon, Inc. v. Aetna Cas. & Sur. Co.,* 737 F.Supp. 1320, 1337. The judgment in the *Handgards* action did not grant any damages directly resulting from the filing of the 1967 Reidy action, except for the sum of $6,582 in attorneys' fees. Otherwise, all of Handgards' damages essentially flowed from the impact of the 1962 suit upon Handgards' ability to develop and compete in the relevant market. Wholesaler Porter made this clear. Neither the 1962 nor the 1967 suit specified particular machines; the 1967 *Reidy* suit merely added Reidy's personal liability to Handgards' because of his arguable ownership of certain machines.

4. In deciding whether the insured has acted reasonably with respect to the timeliness of its provision of notice, a court should take into consideration "the 'particular background … and experience' of this particular insured.... This is because the standard of conduct to be applied involves some knowledge of or assumptions as to the law of liability by the insured and *some judgment … respecting application of the law to the known facts." Peskin,* 520 A.2d at 857, *citing Figueroa v. Puter,* 84 N.J.Super. 349, 202 A.2d 195, 198 (App.Div.1964). Ethicon and J & J are corporate entities with competent legal departments and insurance claims staff. Therefore, their lack of awareness of coverage for malicious prosecution is not that easily excused.