**Eyvind EARLE and Joan Earle, Plaintiffs,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant.**

No. C 95–20205 JW.

United States District Court, N.D. California.

Aug. 12, 1996.

J. David Black, Paul H. Goldstein, Jackson, Tufts, Cole & Black, San Jose, CA.

Susan M. Popik, Mark A. White, Chapman, Popik & White, San Francisco, CA.

ORDER DENYING PLAINTIFF'S MO-
TION FOR SUMMARY JUDGMENT;
GRANTING DEFENDANT'S MO-
TION FOR SUMMARY JUDGMENT

WARE, District Judge.

The Court has before it the cross-motions of the parties for summary judgment. Based upon all pleadings filed to date, as well as on the oral argument of counsel, the Court DE-NIES Plaintiff's motion and GRANTS Defendant's motion.

## BACKGROUND

Plaintiffs Eyvind and Joan Earle ("the Earles") filed this action in state court, seeking compensatory and punitive damages for an alleged tortious breach of a liability insurance policy. The Earles claim that Defendant State Farm Fire & Casualty Company ("State Farm") wrongfully refused to pay The Earles' defense costs in the underlying state court litigation. Defendant removed the action to federal court. This case arises out of a commercial lawsuit against the Earles in the Monterey Superior Court which involved several claims, including one for defamation. The Earles first tendered the defense to Defendant in August 1994, after the jury rendered a verdict against the Earles in July 1994.

In support of their cross-motions, the parties have filed an "Agreed Statement of Facts" in which they state that they seek resolution of the following issue: whether the Earles are entitled to reimbursement of post-tender fees and costs incurred by them in defending and settling a lawsuit in Monterey County Superior Court. The parties have stipulated to the facts set forth below.

The Earles reside in Carmel, Monterey County, California. Eyvind Earle is a prominent artist, now 80 years old, whose paintings and other works are bought and sold throughout the world. State Farm is a corporation organized and existing under the laws of the State of Illinois and is engaged in the business of insurance in California. Defendant issued a Personal Liability Umbrella Policy (the "policy") to the Earles effective March 15, 1992 to March 15, 1993.

The State Farm policy states that State Farm would provide the Earles with a defense to claims or suits covered by the policy. The policy also delineated State Farm's indemnity obligation if the Earles became legally obligated to pay damages for a "loss," defined in the policy as "an accident that results in personal injury or property damage during the policy period." The parties agree that as relevant to this case, "personal injury" is defined to include "libel, slander, defamation of character or invasion of rights of privacy."

On approximately April 15, 1993, the Earles were sued in Los Angeles Superior Court in *Bane v. Earle.* The *Bane* action was transferred to the Monterey County Superior Court. The plaintiffs in the *Bane* action directed a form interrogatory to the Earles requesting specific information about insurance policies in effect "[a]t the time of the incident" through which the Earles "were or might be insured in any manner ... for the damages, claims or actions that have arisen out of the incident." The responses to these interrogatories were served on Bane in mid-July 1993, and contained basic information about the two policies [1] issued by State Farm to the Earles. The *Bane* trial began on June 27, 1994. On July 22, 1994, the jury rendered a group of special verdicts against the Earles. These special verdicts awarded damages totaling $10,900,000. One of the special verdicts based on the defamation claim awarded Bane $350,000 as "general damages" and $350,000 as "presumed damages."

Immediately after the jury verdicts were announced, the trial court informed the parties that it wished to supervise settlement discussions. At about the same time, the Earles retained new attorneys to assist them in evaluating their legal options. On or about August 11, 1994, the Earles, acting through their new attorneys, tendered the *Bane* lawsuit to State Farm and asked for reimbursement of pre-tender defense fees and costs, as well as payment of that portion of the judgment relating to the defamation claim. This was the first notice to State Farm of the *Bane* lawsuit.

Settlement discussions began under the trial court's supervision on or about August 15, 1994 and continued through mid-November 1994. Judgment on the jury verdicts was entered on September 22, 1994. The judgment included an award of $700,000 to Bane on the defamation claim against the Earles.

While settlement discussions were proceeding, the Earles prepared a motion for judgment notwithstanding the verdict and a motion for a new trial. These motions were filed on October 24, 1995. The Earles entered into a comprehensive settlement agreement in *Bane* on or about November 18, 1994. Under the terms of the settlement, the Earles agreed to pay the *Bane* plaintiffs $2,250,000 in cash and to deliver to them 1540 Earle graphics worth (on average) approximately $3,000 wholesale per graphic print.

State Farm acknowledged receipt of the tender on or about August 15, 1994 and stated that it would proceed with its coverage review. By letters dated August 15 and 18, 1994, State Farm advised the Earles that "we are neither accepting nor rejecting your tender of defense at this time." During the review period, which lasted until February 1995, the Earles provided State Farm with information relevant to their claim as requested, and kept State Farm apprised of the progress of the settlement discussions as they occurred.

On October 7, 1994, State Farm conditionally offered to contribute $517,000 to the settlement of the *Bane* action, representing 50% of the total verdict on the defamation claim (including interest accrued and costs). The Earles accepted this offer, with modifications, on November 9, 1994.[2] State Farm tendered its check to the Earles on or about November 17, 1994. This payment was accompanied by a letter from counsel for State Farm dated November 17, 1994, which stated:

> The payment and acceptance of this sum will resolve any dispute between Mr. Earle and State Farm regarding the amount which State Farm may owe to Mr. Earle pursuant to an obligation imposed by an insurance policy issued by State Farm Fire & Casualty Company to indemnify him for damages for which he is legally liable. All rights and issues regarding the existence and extent of any obligation of State Farm to pay or reimburse any insured for fees and costs incurred in the defense of the claims and suit are preserved by all parties

---

**1.** State Farm also issued to the Earles a homeowners policy which is not at issue in this action.

**2.** The Earles received an equal contribution from another insurer. That insurer and policy is not at issue in the instant case.

and are unaffected by this payment and the related agreement.

Agreed Statement, Exh. F.

State Farm advised the Earles by letter of February 1, 1995 that it concluded it was not obligated to pay any of the fees and costs the Earles incurred in defense of the *Bane* case and therefore it denied the Earles' claim for pre- and post-tender defense expenses.[3] The Earles claimed entitlement to post-tender fees and costs incurred between August 11, 1994 and November 1994 in the approximate amount of $260,000. State Farm has not paid any of these post-tender defense fees and costs. The parties have agreed to a stipulated amount of damages in the event the final judgment in this action is in favor of the Earles.

Based on the claims asserted in the *Bane* complaint, State Farm believes it would most likely have accepted the Earles' tender of defense pursuant to a reservation of rights under the policy had the tender been made at the outset of the litigation and does not contend in this proceeding that it would have denied the tender.

The policy at issue provides as follows in the coverages section:

1. Coverage L—Personal Liability. If you are legally obligated to pay damages for a loss we will pay your net loss minus the retained limit ...

2. Defense and Settlement

a. We may investigate, negotiate and settle a claim or suit covered by this policy.

b. When the claim or suit is covered by this policy, but not covered by any other policy available to you:

(1) we will defend the suit against you; ...

(4) we will pay the reasonable expenses you incur at our request. ...

Agreed Statement ¶ 21B.[4]

The policy's definitions section includes the following:

2. "business" means a trade, profession or occupation.

6. "loss" means an accident that results in personal injury or property damage during the policy period. This includes injurious exposure to conditions.

9. "personal injury" means:

c. libel, slander, defamation of character or invasion of rights privacy ...

Agreed Statement ¶ 21A.

The exclusions section states: "We will not provide insurance ... for any loss caused by your business operations or arising out of business property[.]" *Id.* ¶ 21C. The section entitled "Your Duties to Us" states:

These are things you must do for us. We may not provide coverage if you refuse to:

2. notify us of a claim or suit. If a claim or suit is filed against you, notify your underlying insurer and us right away. You must send us every demand, notice, summons or other process you receive.

*Id.* ¶ 21D. The policy also provides that "No action shall be brought against us unless you have complied with the policy provisions[.]" *Id.* ¶ 21E.

The parties also state in their Agreed Statement: "Notwithstanding this stipulation of facts, the parties reserve their right to present to the Court written evidence of other relevant facts which may not be included in this agreed statement. In the event such evidence is presented, the Court shall resolve any issues of fact as though sitting as the trier of fact without a jury." Agreed Statement ¶ 26.

---

**3.** The Earles claimed entitlement to pre-tender fees and costs of over $1,300,000, consisting of approximately $945,000 in fees and approximately $360,000 in costs. State Farm has not paid any of these pre-tender defense fees and costs, and the Earles are not seeking their reimbursement.

**4.** The parties have included the language from the policy in their Agreed Statement, with the qualification that inclusion does not signify that the parties agree as to the relevance or the interpretation of the quoted provisions.

## DISCUSSION

■ The parties agree that this lawsuit is limited to the question whether the Earles are entitled to be reimbursed for their post-tender defense fees and costs. The Earles initially sought reimbursement of pre-tender defense fees and costs, as well as payment of that portion of the judgment relating to the defamation claim. The February 1, 1995 State Farm letter declining to pay the Earles' defense costs stated:

> As I assume you know, California law provides that where an insurer has been prejudiced by the insured's late tender of defense, the carrier is relieved of any duty to defend its insured. (An even more lenient standard appears to apply with respect to pre-tender fees.) State Farm believes that the facts here present a compelling case of prejudice resulting from the Earles' failure to provide it with any notice whatever of the pendency of the underlying action until after the rendition of a verdict in excess of $10+ million, and after the expenditure of well in excess of $1 million in attorneys' fees. This failure of notice is particularly curious here, given the fact that the Earles were fully aware of the potentially-applicable insurance, as evidenced in detailed information they provided to the Banes in response to discovery requests more than a year before trial of the underlying action.

Agreed Statement, Exh. G.

■ This case presents several problems: First, the Earles knew that they had insurance, but did not tender the defense of the *Bane* action until after the jury rendered a verdict. Agreed Statement, ¶¶ 8, 10, 16, Exh. D. Second, in order to prevail under California law, State Farm is required to demonstrate actual prejudice, which in this case requires proof of a negative. Finally, the Court is aware of no legal authority which distinguishes prejudice in a situation where the insurer is faced with a demand for all defense fees and costs versus a demand for only those costs incurred after an admittedly late tender. The Court finds that the prejudice standard is the same whether the insured seeks all costs or waives those incurred before a late tender.

The Court recognizes that because the pre-trial and trial stages of the underlying action concluded before State Farm had an opportunity to participate, any attempt to demonstrate what would have happened had State Farm received timely tender is necessarily speculation. However, on the facts of this case, the Court finds that prejudice is demonstrated. State Farm has shown a substantial likelihood that several legal issues may have been resolved in State Farm's favor in the underlying action, which in turn could have limited its monetary exposure. Even though this dispute is now limited solely to a claim for fees and costs incurred after a concededly late tender, these fees and costs are necessarily affected by the pre-tender litigation activity.

■ California law provides that breach of the notice provisions in an insurance policy does not automatically relieve the insurer of liability. "Under California law, an insured's breach of [notice] conditions will relieve the insurer of liability if it is actually prejudiced by late notice." *Collin v. American Empire Insur. Co.*, 21 Cal.App.4th 787, 819, 26 Cal. Rptr.2d 391 (1994) (citing *Northwestern Title Sec. Co. v. Flack*, 6 Cal.App.3d 134, 142–43, 85 Cal.Rptr. 693 (1970)). The insurer bears the burden of proof on this issue. *Select Insur. Co. v. Superior Court*, 226 Cal.App.3d 631, 638, 276 Cal.Rptr. 598 (1990). To date, the rule in California is that "[t]he insurer's burden is not carried by a showing of possibility of prejudice to the insurer. Rather, actual prejudice must be shown. The insurer must establish at the very least that if the cooperation clause had not been' breached there was a substantial likelihood the trier of fact would have found in the insured's favor." *Northwestern Title Sec. Co. v. Flack*, 6 Cal. App.3d 134, 141–42, 85 Cal.Rptr. 693 (1970). "Although the issue of prejudice is ordinarily one of fact, it may be established as a matter of law by the facts proved." *Id.* at 141, 85 Cal.Rptr. 693.

However, no California court has defined prejudice in the context of a post-trial tender. The California case which comes closest to addressing the issue is *Select Insurance Company v. Superior Court*, 226 Cal.App.3d 631, 276 Cal.Rptr. 598 (1990). In *Select In-*

*surance,* the insured tendered the defense to the insurer after judgment was entered pursuant to an order granting a motion for summary adjudication. *Id.* at 634, 276 Cal. Rptr. 598. The insurer denied the tender, claiming that the policy did not cover the conduct at issue and that it was prejudiced by the late notice. Addressing the prejudice issue, the appellate court emphasized that the insured's lack of notice "may have deprived his insurer not just of the opportunity to pay for [the insured's] defense but of the opportunity to settle the [claim] for considerably less." *Id.* at 638, 276 Cal.Rptr. 598. The court remanded for the reason that "the insurers may be able to show they were prejudiced by [the insured's] lack of notice[.]" *Id.* at 639, 276 Cal.Rptr. 598. The court reiterated that "if successful, the insurers' notice defense could prevent any recovery under the policy." *Id.* at 639, 276 Cal.Rptr. 598 (citing *Dalzell v. Northwestern Mut. Insur. Co.,* 218 Cal.App.2d 96, 103, 32 Cal.Rptr. 125 (1963)).

■ The Earles argue that State Farm must demonstrate actual and substantial prejudice resulting from the Earles' delayed tender to justify its refusal to pay any post-tender costs, and that such a showing is impossible under the circumstances. The Earles contend that State Farm would have expended substantial defense fees and costs under a hypothetical early-tender scenario, and State Farm, in fact, has been benefitted by their late tender and waiver of pre-tender fees. The Earles assert that State Farm is actually in a far better economic position than if a timely tender had been effected. However, the Earles cannot rely upon the fact that they have chosen to abandon their claim to pre-tender fees in order to support their argument that State Farm has been benefited. The Court agrees with State Farm that events subsequent to the tender, including a decision to waive some claims

after a tender is denied is not relevant to the prejudice analysis.

State Farm argues that it has demonstrated actual prejudice because the Earles' belated tender not only deprived State Farm of any opportunity to affect the outcome of the underlying case, but it also deprived State Farm of the ability to prove that it might have done so. State Farm argues that almost every other state which has considered the issue has concluded that the insurer is prejudiced where the first notice of the lawsuit comes after the trial is over.[5] State Farm contends that in such a situation, the insurer cannot be required to "assume the burden of proving a negative." *Washington v. Federal Kemper Insur. Co.,* 60 Md.App. 288, 295–96, 482 A.2d 503 (1984), *cert. denied,* 302 Md. 289, 487 A.2d 292 (1985) (applying actual prejudice standard and finding that where insurer has been deprived of all opportunity to defend, "entry of adverse judgment is affirmative evidence of actual prejudice"). The Fifth Circuit in *Ethicon, Inc. v. Aetna Cas. & Sur. Co.,* 805 F.Supp. 203 (S.D.N.Y. 1992), applied the likelihood of appreciable prejudice standard to a post-judgment tender and found that where there is a likelihood that the insurer might have succeeded in settling the case or capping liability, recovery against the insurer would be grossly unjust. *Id.* at 205. State Farm argues that "the potential twists that the case might have taken had [the insurer] been involved are impossible to reconstruct." *Id.* at 205–06. It is significant that unlike the Earles, who were aware of the potential State Farm insurance coverage, the insured in *Ethicon* "accidentally" discovered the potential coverage after two judgments. *Id.* at 204.

At least one state court has determined that prejudice exists as a matter of law where the insured was aware of the potential for coverage, but did not contact the insurer until after the trial. *Felice v. St. Paul Fire & Marine Insur. Co.,* 42 Wash.App. 352, 711

---

5. This court must generally ascertain what the California state law is from all the available data. *West v. American Tel. & Tel. Co.* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). In the absence of a decision by the state's highest court, the federal court looks to decisions of state appellate courts for guidance. *State Farm Fire &* *Cas. Co. v. Abraio,* 874 F.2d 619, 621 (9th Cir. 1989). "It is understood that 'well-reasoned decisions from other jurisdictions' may also be considered." *Insurance Co. of Pennsylvania v. Associated Int'l Insur. Co.,* 922 F.2d 516, 520 (9th Cir.1990).

P.2d 1066 (1985). In *Felice*, the insured notified the insurer of the unfavorable trial result just before the 30–day appeal period ended. The Washington court held that "Simply stated, this delay prejudiced the [insurer] because it was precluded from investigating and evaluating the case prior to, during and after trial." *Id.* at 359–60, 711 P.2d 1066.

State Farm also argues that the post-trial tender cases in which the court refused to find prejudice are distinguishable on one of three grounds, none of which is applicable here: (1) the insured was unaware of the potential insurance until after trial; (2) the insurer disclaimed coverage as well as raising the defense of late notice; or (3) the insurer failed to present any evidence to support its claim of prejudice.[6]

State Farm contends, and the Earles do not dispute, that the only claim in the underlying lawsuit which is even potentially within the scope of coverage is the defamation claim. State Farm argues that because Mr. Earle admitted making the statements, the only issue in the underlying action was whether the statements were true. State Farm contends that had it accepted the tender, it would have sought declaratory relief that the claim fell within the policy's business operations exclusion as the statements were made to the underlying parties' business associates and that they arose out of the parties' business relationship.

State Farm argues that due to the delayed tender, it cannot possibly quantify the potential benefit to State Farm or the Earles had it been able to participate in litigating the underlying action. Like the insurer in *Ethicon*, 805 F.Supp. at 204, State Farm presents evidence that the Earles' exposure, as well as its own, could have been substantially reduced with an earlier tender because: (1) State Farm would not have been required to reimburse independent counsel at an hourly rate higher than the rate it actually pays attorneys retained by it in the ordinary course of business pursuant to California Civil Code § 2860(c); (2) it would have been allowed to seek reimbursement of fees and costs allocable to noncovered claims, which in this case, is every claim other than the defamation claim; (3) had a special interrogatory been propounded to the jury asking whether the defamation was intentional, there is a substantial likelihood that the jury would have answered in the affirmative (in light of the punitive damages award) and thus State Farm maintains that it would be relieved of the obligation to pay any portion of the judgment pursuant to *Allstate Insur. Co. v. La-Pore*, 762 F.Supp. 268, 271 (N.D.Cal.1991); and (4) had a special interrogatory been propounded to the jury asking whether the defamation arose out of Mr. Earle's business operations, there is a substantial likelihood that the jury would have answered in the affirmative, thus relieving State Farm of its obligation to pay the judgment due to the policy's business operations exclusion. *See* Vitale Decl. ¶¶ 6–8. Thus, State Farm has established prejudice as a matter of law, entitling it to summary judgment in its favor.

## CONCLUSION

The Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

IT IS SO ORDERED.

---

6. *See Pulse v. Northwest Farm Bureau Insur. Co.*, 18 Wash.App. 59, 60, 566 P.2d 577 (1977) (insured not aware of potential coverage until after trial); *Halsey v. Fireman's Fund Insur. Co.*, 68 Or.App. 349, 353, 681 P.2d 168 (1984) (insurer disclaimed coverage on substantive grounds as well as late notice); *Weaver Bros., Inc. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984) (no evidence of prejudice).